ב"ה

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

### Case No. 1:22-CV-03131-DG-SJB

RADIKA RAMPERSAD,
*Plaintiff,*

v.

BASEO RAMPERSAD, et al.,
*Defendants.*

_____/

**FILED**
**in the Clerk's Office**
**U.S. District Court,**
**EDNY**
**Nov 4, 2022, 6:46 PM**
**Brooklyn**
**Pro Se Office via Box.com**

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, <u>COMPENSENSATORY DAMAGES, AND PUNITIVE DAMAGES</u>

TITLE 18 U.S.C. § 1961 et Seq. – RACKETEERING INFULENCED AND CORRUPT ORGANIZATIONS

TITLE 18 U.S.C. § 371 – CONSPIRACY TO DEFRAUD UNITED STATES

TITLE 18 U.S.C. § 1425 – IMMIGRATION FRAUD*

TITLE 18 U.S.C. § 1956 – MONEY LAUNDERING*

TITLE 18 U.S.C. § 1513 – RETALIATING AGAINST A VICTIM OR AN INFORMANT*

TITLE 18 U.S.C. § 1951 – INTERFERNCE WITH COMMERCE, OR ROBBERY*

TITLE 18 U.S.C. § 1512 – INTIMIDATION OF A VICTIM*

TITLE 18 U.S.C. § 1501 – UNLAWFUL ACQUISITION OF LAND

TITLE 18 U.S.C. § 1344 – BANK FRAUD*

TITLE 18 U.S.C. § 1343 – WIRE FRAUD*

TITLE 18 U.S.C. § 1546 – FRAUD OR MISUSE OF VISA, PERMITS, OR DOCUMENTS*

TITLE 18 U.S.C. § 1101 et seq. – REAL ID ACT OF 2005

1

TITLE 18 U.S.C. § 1426 – REPRODUCTION OR PROCUREMENT OF
IMMIGRATION DOCUMENTS*
TITLE 18 U.S.C. § 1028 – IDENTITY THEFT*
TITLE 18 U.S.C. § 1028A – AGGRAVATED IDENTITY THEFT*

## I.    JURISDICTION AND VENUE

1.    The Plaintiff avers that this Court has original jurisdiction, supplementary jurisdiction, and explicit statutory jurisdiction over this matter as set forth below.

### A.    JURISDICTION

2.    This Court has original jurisdiction over all cases and controversies under the constitution, statutes, and treaties pursuant to 28 U.S.C. § 1331.

3.    This Court has supplemental jurisdiction where elements of the offenses set forth herein, and for certain of which Mrs. Price seeks relief are so intertwined with the offenses over which this Court has original jurisdiction, they may not be severed, pursuant to 28. U.S.C. § 1367(a).

4.    This Court has explicit subject matter jurisdiction over this case and controversary pursuant to 18 U.S.C. § 1964(c).

---

* Statues and offenses marked by an asterisk ("*") are statutory qualifying offenses under Title 18 U.S.C. § 1962.

## B. VENUE

5.   The Plaintiff resides in, and a substantial portion of the actions and offenses took place in, the Eastern District of New York ("EDNY"). As such, Mrs. Price avers the proper venue for this case has been set in the EDNY pursuant to 28 U.S.C. § 1391(b).

6.   Additionally, where statutory qualifying offenses under 18 U.S.C. § 1962 were committed in the EDNY, venue in the EDNY was properly set pursuant to 18 U.S.C. § 1965.

## II.   THE PARTIES

7.   Sherry Price is a legal permanent resident of the United States, and a resident of the State of New York. Mrs. Price has resided at 243-10 138th Ave, Apt 2F, Rosedale, New York 14422 from January 2002 through the present.

8.   Basdeo Rampersad is a citizen of the Republic of Trinidad and Tobago. Mr. Rampersad being unlawfully present in the United States, (See Exhibit "A") declared under the penalty of perjury to the United States Citizenship and Immigration Service ("USCIS"), that he resided at 368 Palmetto Street, Apt 2R, Brooklyn, New York 11237-5932.

9.   Rajdaye Babwah is a naturalized citizen of the United States, and a resident of the State of New York. Ms. Babwah declared under penalty of

perjury to USCIS that she resided with her husband, Basdeo Rampersad, at 368 Palmetto Street, Apt 2R, Brooklyn, New York 11237-5932.

10.   Jane Doe[1], the girlfriend of Basdeo Rampersad, is of unknown citizenship and residential status.

## III.   INTRODUCTION AND BACKGROUND

11.   On or about December 2017, Basdeo Rampersad, Rajdaye Babwah, and Jane Doe ("the Defendants"), individually and collectively, knowingly, and willfully, engaged in a scheme or artifice, a conspiracy, to defraud the United States[2], the state of New York, the State of Maryland, State Farm Insurance Company, Bank of America, Capital One Bank, TD Bank, Astound Broadband Powered by RCN, Verizon, Lyons Mortgage Services, and the Plaintiff. These acts by the Defendants were in violation of predicate offences under of 18 U.S.C. § 1962.

12.   The ultimate goal of the Defendants' conspiracy was to unlawfully obtain United States citizenship for Basdeo Rampersad. In the furtherance of their scheme, the Defendants sought to, and fraudulently obtained immigration documents. The Defendants subsequently used the

---

[1]      The Plaintiff has filed the subpoena attached as Exhibit "B", with the New York State Department of Motor Vehicle to obtain Jane Doe's legal name and address.

[2]      The Defendants provided numerous false statements to multiple federal agencies as part of their scheme or artifice to defraud the United States, including but not limited to USCIS, the Internal Revenue Services ("IRS"), the Department of Homeland Security ("DHS"), and the Social Security Administration ("SSA").

fraudulently obtained immigration documents to unlawfully obtain driver's licenses from the state of New York and Maryland. (See Exhibit "C"). The Defendants' acts were in violation of 18 U.S.C. §§ 371, § 1028, § 1028A, § 1426, and § 1425.

13. The Defendants then used the initial illegally obtained documents, to obtain federally compliant, Real ID of 2005, identification (See Exhibit "C"). Defendant Basdeo Rampersad were in violation of 18 U.S.C. § 1101 et seq., and 18 U.S.C. § 1546.

14. The Defendants' used the fraudulently obtained immigration documents and identification to illegally acquire employment, open bank accounts, register for social security benefits, and fraudulently enter contracts for services, property, and other financial gain.*The Defendants' acts were in violation of 18 U.S.C. §§ 1028-1028A, § 1343, § 1344, §1546, § 1951, § 1956, and 48 U.S.C. § 1501. See Exhibits "D", "E", "F", "G", "H", "I" and "J".

15. When Mrs. Price became aware of the Defendants' unlawful acts, the Defendants engaged in a pattern of harassment that culminated into multiple physical assaults on the Plaintiff. See Exhibit "K" and "L". Defendants Jane Doe and Rajdaye Babwah aided and abetted Defendant Rampersad in the commission of these crimes.

5

16.   Defendant Rampersad pleaded guilty to assault with intent to cause physical injury, Second Degree Harassment with physical contact, and Disorderly Conduct. See Exhibit "L". Defendant Rampersad pleaded guilty to Criminal Contempt and Harassment in Second Degree. See Exhibit "M".

17.   Defendant Rampersad pleaded guilty *three (3) additionally times* to Criminal Contempt of Court and Disorderly Conduct. See Exhibits "N", "O", and "P".

18.   The Defendants' threats, and physical intimidation were intended to coerce Mrs. Price from reporting the Defendants' actions to law enforcement. The Defendants' acts were in violation of 18 U.S.C. § 1512. See also Exhibit "Q".

19.   On or about February 2020, the Plaintiff discovered evidence of the federal crimes committed by the Defendants. At that time, despite repeated threats, Mrs. Price contacted Assistant United Sates Attorney ("AUSA") Joseph Saccone. AUSA Saccone notified Homeland Security Investigator Agent Menzini Besian of the information provided by the Plaintiff.

20.   On February 11, 2022, Agent Besian together with another agent met with Mrs. Price, interviewed her and took possessions of the evidence of the Defendant's criminal conduct.

21. During the course of the interview, the second agent placed a telephone call wherein he confirmed the true identity associated with the social security number used by the Defendant to procure and reproduce fraudulent immigration documents, Social Security Card, and United States Of America Permanent Resident Card. The agents confirmed at that time that the Defendant Basdeo Rampersad, aided and abided by Rajdaye Babwah and Jane Doe had violated 18 U.S.C. §§ 1028-1028A, Identity Theft and Aggravated Identity Theft.

22. Acting upon knowledge and belief of all the facts and evidence, combined with statements of federal agents and the U.S. Attorney's Office ("USAO"), Mrs. Price determined she had been a target for fraud and deliberate breach of contract *as part* of the Defendants' scheme or artifice to defraud the United States.

## IV. CAUSE OF ACTION FOR DECLARATORY JUDGEMENT, INJUCTIVE RELIEF, COMPENSATORY DAMAGES, AND PUNITIVE DAMAGES

23. The standard for claims for injunctive relief under 18 U.S.C. § 1964(c) were articulated where the district court held, "[o]n its face, RICO [Racketeering Influenced and Corrupt Organizations] *does not require* anything more to make out a civil claim under 18 U.S.C. § 1964, than to make out a criminal case [under] 18 U.S.C. § 1962." See *Gilbert v.*

7

*Prudential-Bache Sec. Inc.,*643 F. Supp. 107, 110 (E.D. Pa 1986)(emphasis added).

24. In this case, the Plaintiff has not only exceeded the threshold showing for a criminal cause under 18 U.S.C. § 1962, but also has provided substantial assistance to the United States in its investigation and prosecution of the Defendants.

25. The Plaintiff re alleges each and every factual allegation and the evidence of the criminal conduct in paragraphs 1-24 of this Complaint and attached hereto.

26. Defendant Basdeo Rampersad, aided and abetted by conspirators Rajdaye Babwah and Jane Doe, knowingly and willfully entered into a contractual agreement[3] involving the acquisition property, acquisition of bank loans, and transmission of funds by means of wire. See Exhibit "R". The Defendants did so through the knowing and willful use of fraudulent documentation, and false statements, with the specific intent to defraud Mrs. Price by and through the deliberate breach of the contract agreement *as a part* of their scheme or artifice to defraud the United States.[4]

---

[3]    See Exhibit "B"

[4]    In addition to the United States and the Plaintiff, Defendants defrauded multiple states, federally regulated public utilities, banks, insurance companies, and other corporations.

27. The Plaintiff respectfully moves this Court for the following equitable relief:

## A. DECLARATORY JUDGMENT

i. That the Defendants knowingly and willfully conspired in a pattern of criminal conduct in violation of 18 U.S.C. § 1962.

ii. That the Defendants knowingly and willfully made materially false statements, representations, and use of fraudulent identity documents to enter into a financial and property contract ("the contract") with the Plaintiff.

iii. That the Defendants knowingly and willfully entered into the contract with the Plaintiff under false pretense, and with the intent to defraud the Plaintiff.

iv. That the Defendants' fraud against the Plaintiff was part of a scheme or artifice to defraud the United States, the State of New York, the State of Maryland, Lyons Mortgage Services, State Farm Insurance Co., Verizon, Jericho Share Healthcare, TD Bank, and Capital One.

## B. INJUNCTIVE RELIEF

i. That the Defendants defrauded the Plaintiff by, and through false statements, misrepresentation and fraudulent documents breached the contract with the Plaintiff. Therein, where the Defendants lack sufficient financial liquidity to fulfill the terms of the contract, the Plaintiff has withdrawn the conditional $200,000.00 in "good faith" equity granted to the Defendant, and exercises the penalty clause(s) of the contract fully.

ii. The Plaintiff seeks immediate transfer ownership in title from the Defendants due to their lack of financial liquidity to pay the Plaintiff (1) $44,000.00 outstanding balance from closing, and (2) the $200,000.00 in equity withdrawn due to breach of contract.

9

iii. The Plaintiff seeks fifty (50%) percent of the balance of the retirement account [Defendant Basdeo Rampersad] as stipulated in the contract for breach as of the date of the termination of his employment, and to include all unauthorized loans or withdrawals from said account in the furtherance of the conspiracy to commit fraud, estimated at $119,878.94.

## C. COMPENSATORY DAMAGES

i. The total outstanding contract value due to the Plaintiff at the Defendants' breach was $363,878.94. The Plaintiff seeks compensatory damages by transfer of the ownership in title to the property and residence, and $48,376.31 in interest lost due to the Defendants breach of contract.

ii. The Plaintiff seeks $3,720.00 in lost wages and $492.10 interest on such wages lost due to the Defendant's intimidation, coercion, harassment, and physical assault.

iii. The Plaintiff seek $30,000 in damages to physical property and personal property due to the Defendants unlawful destruction of the property, including but not limited to security fencing, out building, and attached apartments.

iv. The Plaintiff seeks recovery of all court fees, and related litigation costs incurred in the bringing of legal action pursuant to the terms of the contract, and 18 U.S.C. § 1964(c).

## D. PUNITIVE DAMAGES

i. The Plaintiff seeks punitive damages in a sum certain of $1,307,576.80, three fold the damages sustained, pursuant to 18 U.S.C. § 1964(c).

**WHEREFORE**, in view of the foregoing arguments and citations of authority, the

Plaintiff respectfully moves this Court for the entry of:

i.    Declaratory judgment for the Plaintiff;
ii.   Injunctive relief in (a) transfer of ownership in title of the property and residence, and (b) payment of a sum certain of $119,878.94;
iii.  Compensatory damages of a sum certain of $84,457.09, and fees and costs;
iv.   Punitive damages of a sum certain of $1,307,576.80;
v.    And any other relief as this Court may find just and proper.

Dated: November 4, 2022

Respectfully submitted,

**Sherry** Digitally signed
**Price** by Sherry Price
Date: 2022.11.04
18:46:04 -04'00'

/s/ Sherry Price

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing, furnished to all parties notice for service, under the exclusive care and custody of the United States Postal Service via Certified Mail within the State of New York upon:

> Basdeo Rampersad
> Rajdaye Babwah
> ℅ Robert Frank
> 98-20 Metropolitan Ave
> Forest Hills, New York 11375

Executed on November 4, 2022

By: **Sherry Price**  Digitally signed by
Sherry Price
Date: 2022.11.04
18:46:22 -04'00'

Sherry Price
Plaintiff

# Exhibit

# A

**U.S. Department of Homeland Security**
26 Federal Plaza, Room 4-437
New York, NY 10278



**U.S. Citizenship**
**and Immigration**
**Services**

May 10, 2010

Basdeo Rampersad
243-10 138th Avenue-Apt. 2F
Rosedale, NY 11422

RE: A 99 374 425
    Motion to Reopen (I-290B)

# Notice of Decision
# Motion to Reopen and Reconsider

Dear Mr. Rampersad:

On March 15, 2007, you filed a Motion to Reopen (I-290B) an adverse decision made regarding your Application for Status as a Temporary Resident (I-687) filed on October 27, 2005 pursuant to the terms of §245A of the Immigration and Nationality Act. We thoroughly reviewed your request that the case be reopened pursuant to a service motion and we evaluated the reason for your appeal as well. However, it has been determined that a motion to reopen Sua Sponte is not warranted.

Your I-687 was initially denied on February 15, 2007 (first denial voided due to incorrect language); then an amended denial was issued on May 7, 2010, due to failure to respond to the Service's Notice of Intent to deny that was mailed to you on December 12, 2006, Your current motion does not overcome the reasons for denial; as you have not submitted any new evidence other than two affidavits (from Jamal Baksh) that does not place you in the United States prior to January 1, 1982.

Furthermore, Title 8, Code of Federal Regulations, 103.5(a)(2) states in pertinent part:

A motion to reopen must state the new facts to be provided in the reopened proceeding and be supported by affidavits or other documentary evidence. A motion to reopen an application or petition denied due to abandonment must be filed with evidence that the decision was in error because:

    (i)  The requested evidence was not material to the issue of eligibility;
    (ii)  The required initial evidence was submitted with the application or petition, or the request for initial information or appearance was complied with during the allotted period; or
    (iii) The request for additional information or appearance was sent to an address other than that on the application, petition, or notice of representation, or that the applicant or petitioner advised the Service, in writing, of a change of address or change of representation subsequent to filing and before the Service's request was sent, and the request did not go to the new address."

Title 8, Code of Federal Regulations, 103.5(a)(3) states in pertinent part:

A motion to reconsider must state the reasons for reconsideration and be supported by any pertinent precedent decisions to establish that the decision was based on an incorrect application of law or Service policy. A motion to reconsider a decision on an application or petition must, when filed, also establish that the initial decision was incorrect based on the evidence of record at the time of initial decision.

Title 8, Code of Federal Regulations, 103.5(a)(4) states in pertinent part:

A motion that does not meet applicable requirements shall be dismissed.

The request for a Motion to Reopen fails to meet the requirements stated above. You have not stated any new facts in which you provided affidavits or other documentary evidence in support of, and you have not established that the decision was based on an incorrect application of law or Service policy. Furthermore, the grounds for denial have not been overcome.

In addition, 8 CFR 245a.2.(q) states in part a Motion to reopen a proceeding or reconsider a decision shall not be considered.

Section 245a.20(c) of Title 8 of the Code of Federal Regulations provides in pertinent part:

(c) Motions. The Service director who denied the application may reopen and reconsider any adverse decision sua sponte. When an appeal to the AAO has been filed, the director may issue a new decision that will grant the benefit that has been requested. Motion to reopen a proceeding or reconsider a decision shall not be considered under Subpart B.

Therefore, your motion is dismissed. As such, the denial stands and no further consideration will be given to your case in the instant matter. We trust that this information is responsive to your inquiry.

Sincerely,

Andrea J. Quarantillo
District Director
New York District

AJQ: es

cc:

# Exhibit

# B

# UNITED STATES DISTRICT COURT
## for the
### EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| SHERRY PRICE | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. 1:22-cv-03131-DG-SJB |
| | ) | |
| BASDEO RAMPERSAD et al., | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:
                                 NYS DMV Subpoena Office
                        *(Name of person to whom this subpoena is directed)*

☒ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: All records, documents, information, and data regarding with New York license plate JCJ1134, including but not limited to, copies of the title documents, lien holders, owner name, owner's state driver's license, insurance carrier, including but not limited to, copies of the title documents, lien holders, owner name, *(continue on separate page)*

| Place:   Sherry Price | Date and Time: |
|---|---|
| 243-10 138th # 2F | November 20, 2022 |
| Rosedale, NY 11422 | |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   NOV 0 4 2022

BRENNA B. MAHONEY
*CLERK OF COURT*

                                                              OR

_____                    _____
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*   Sherry Price
_____ , who issues or requests this subpoena, are:

243-10 138th Ave # 2F, Rosedale NY 11422;  Sherry_Price@outlook.com; 718-809-0912

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

### Case No. 1:22-cv-03131-DG-SJB

SHERRY PRICE,
    Plaintiff,

v.

BASDEO RAMPERSAD et al.,
    *Defendants.*

---

## SUBPOENA REQUEST CONTINUE

...owner's state driver's license, insurance carrier, including date issued, address, limitation(s), endorsements, suspensions, revocations, and expiration dates.

Insurance carrier: Emcompass Insurance Company
Policy No. 282559580
Vin No. JTMDFREVXJJ744449

# Exhibit
# C

 

New York State Department of Motor Vehicles

## ORDER OF SUSPENSION OR REVOCATION

### PART 1 - CONTINUATION OF DRIVING PRIVILEGES

| Motorist Name (Last, First, MI) | Date of Birth | Year License Expires | License Class | Restrictions |
|---|---|---|---|---|
| Rampersad, Basdeo | 11-4-71 | 2010 | D | |

According to Section 1193 of the Vehicle and Traffic Law, your driver license will be ☑ suspended ☐ revoked
on 11-19-05 . This order will allow you to drive, with the same limitations as your driver license, until your suspension/
revocation starts. **You must have both parts of this order with you when you drive.** If you do not have both parts of this order with
you, you may be charged with a violation of the Vehicle and Traffic Law. When the suspension/revocation starts, you do not have the right to
drive unless you receive a conditional license. This order must be turned in before a conditional license can be issued to you.

(Signature of Judge or Clerk of Court)

MV-1192 (7/02)

---

New York State Department of Motor Vehicles

## ORDER OF SUSPENSION OR REVOCATION

### PART 2

| Motorist Name (Last, First, MI) | Date of Birth | ☑ Male ☐ Female |
|---|---|---|
| Rampersad, Basdeo | 11 4 71 | |

| Number and Street Address | Apt. # | Ticket Number (if unavailable, enter Docket Number) |
|---|---|---|
| 243-10 138 Ave | | 2005 2N05,1934 |

| City | State | Zip Code | Driver License # |
|---|---|---|---|
| Rosedale | N.Y. | 11422 | 121 062 654 |

### COURT/VIOLATION (Certificate of Conviction must be attached)

| Judge Name | Violation Date | Conviction Date | ☐ Check if Youthful Offender |
|---|---|---|---|
| Harrington | 10 30 01 | 10 30 01 | |

| Court Code | Vehicle Class (definitions are listed on the back of this form) | Special Vehicle | All Others |
|---|---|---|---|
| 7 4 0 0 | ☐ Commercial Motor Vehicle (DMV) | ☐ Special Vehicle | ☑ All Others |

### SUSPENSION/REVOCATION

According to Section 1193-2 of the Vehicle and Traffic Law, your driver license/privilege is:

☑ Suspended for 90 days (conviction of 1192-1 first offense only if not operating a CMV or Special Vehicle).

☐ Subject to possible additional penalties under Section 1193-2(b) of the Vehicle and Traffic Law.

☐ Revoked for at least _____ Duration (Enter ONLY one of the options listed on the back of this form)

Sentence date 10 30 05 . This order will be effective on 11-19-05 because of your conviction of
(sentence date or sentence date plus 20 days)

violation of Subdivision ____/____ of Section 1192 of the Vehicle and Traffic Law.

If you have not turned in your driver license to the court, you must turn it in to the Department of Motor Vehicles. If you turn in a temporary
license, you must also turn in your photo license when you receive it.

### COMPLIANCE — Has the motorist complied with this order?

☑ **Yes** (check one below)          ☐ **No**

☐ Photo license/permit.

☐ Temporary license attached. Must also turn in photo license.

☑ Previously turned in to _____ Police _____ on 10 30 05 .

☐ License/permit has been lost, stolen or destroyed.

☐ Out-of-state license.

☐ Unlicensed operator.

| Motorist Signature | Signature of Judge or Clerk of Court |
|---|---|
| Basdeo Rampersad | P Byrne |

### DMV OFFICE USE ONLY

| LICENSE: ☐ Suspended ☐ Revoked | SENTENCE DATE: / / | EXTENDED: ☐ Yes ☐ No | COMPLIANCE: ☐ Yes ☐ No |
|---|---|---|---|

Copy : Motorist

MV-1192 (7/02)



**MVA** Motor Vehicle Administration
6601 Ritchie Highway, N.E.
Glen Burnie, Maryland 21062

A 086945

Expires

11/4/2025

**DRIVER'S LICENSE**
Identification No.

Class Endorsements

**VALID**
**WITHOUT**
**PHOTO**
**LICENSE**

R-516-081-019-848
Control No.    Sp. Code    Rest.

C
Date of Issue

1244852
Height    Weight    Sex    Date of Birth

5/21/2019
Lic. Type Donor

5-11    130    M    11/4/1971    D1    Y

This license is invalid 15 days after return to Maryland.

BASDEO RAMPERSAD
5645 SETTLER PLACE
COLUMBIA MD 21044

Not valid unless signed.

Signature

Exhibit

D



**RESIDENT ALIEN**
U.S.Department of Justice-Immigration and Naturalization Service

RAMPERSAD, BASDEO
NAME
11 04 71
DOB
A098462403
ALIEN NUMBER
11 05 04
CARD EXPIRES
Basdeo Rampersad

ALIEN REGISTRATION RECEIPT CARD
PERSON IDENTIFIED BY THIS CARD IS ENTITLED TO RESIDE PERMANENTLY AND WORK IN THE U.S.

FX3 NMC 931024 586 · 0185434509

A1USA098462403<02<9418<<<<<<<<
7111043M0411054<<<<<<J96GL03Q6
RAMPERSAD<<BASDEO<<<<<<<<<<<<<



**SOCIAL SECURITY**
SOCIAL SECURITY
ADMINISTRATION
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
THIS NUMBER HAS BEEN ESTABLISHED FOR
USA
BASDEO RAMPERSAD
Basdeo Rampersad
SIGNATURE

Do not laminate this card.

This card is invalid if not signed by the number holder unless health or age prevents signature.

Improper use of this card and/or number by the number holder or any other person is punishable by fine, imprisonment or both.

This card is the property of the Social Security Administration and must be returned upon request. If found, return to:
SSA-ATTN: FOUND SSN CARD
P.O. Box 17087 Baltimore Md. 21203
Contact your local Social Security office for any other matter regarding this card.

Department of Health and Human Services
Social Security Administration
Form OA-702 (1-88)

C44504683

# Exhibit

# E



**PREPARED FOR:**
Rajdaye
**RESERVATION # ENCLOSED**

PRESORTED
STANDARD
U.S. POSTAGE
PAID
CAPITAL ONE

7/21/2022. No one by name lives here, nor has she ever lived here. Please stop sending mails to this person at my address.

Reply by August 10, 2022

0032375  001  001
Rajdaye Babwah
24310 138th Ave.
Rosedale, NY 11422-1822

676

**YOUR PRE-QUALIFIED OFFER**

**1.5%** UNLIMITED CASH BACK

**0%** INTRO APR UNTIL 4/2023

**$0** ANNUAL FEE

# Exhibit

# F


**TD Bank**

America's Most Convenient Bank®

tdbank.com

7
2    MB 01 001193 36201 H 5 A

RAJDAYE BABWAH
24310 138TH AVE # 2F
ROSEDALE, NY 114221822
US

001193 1/1

# Thanks for the update.

Hi RAJDAYE,

We noticed that you recently changed your contact information. Thanks for keeping us in the loop.
If you think you've received this message in error, please call us at **1-888-751-9000**.

Sincerely,

**Paul Bajus**
Head of US Contact Center



**Longest hours**

We're open early and late[1],
so you're always right on time



**Mobile Banking**

Pay bills, deposit checks[2], transfer funds
and more— online or on-the-go.



**Here for you 24/7**

Talk to a human any time
at **1-888-751-9000.**

Member FDIC, TD Bank, N.A. | [1]Data as of March 2018  Comparison of longest average store hours in the regions (MSAs) in which TD Bank operates compared to major banks. Major banks include our top 20 national competitors by MSA, our top five competitors in store share by MSA and any bank with greater or equal store share than TD Bank in the MSA. Major banks do not include banks that operate in retail stores such as grocery stores, or banks that do not fall in an MSA. | [2]TD Bank Mobile Deposit is available to Customers with an active checking, savings or money market account and using a supported, Internet-enabled iOS or Android device with a camera. Other restrictions may apply. Please refer to the Mobile Deposit Addendum.



**TD Bank**
**America's Most Convenient Bank®**
P.O. Box 739
South Windsor, CT 06074-0739

Presorted
First-Class Mail
US Postage Paid
TD Bank

7/14/2022 No one by this lives here, nor has she ever live here in the past. Please stop sending mail for this person.

7
2

MB 01 001193 36201 H 5 A

RAJDAYE BABWAH
24310 138TH AVE # 2F
ROSEDALE, NY 114221822
US

# Exhibit
# G

# verizon✓

# CUSTOMER RECEIPT

Please keep this important document for your records.
This is only an order acknowledgement and is not a bill.

Thank you for your order.
Visit us on the web at www.verizon.com.

Ship to:

RAJDAYE BABWAH

24310 138 AV

ROSEDALE, NY 11422

Cust Ref No:    VICOG1023267357

Ship Date:    03/27/21

| Item | Item Description | Ship Qty |
|------|------------------|----------|
| UPS | UPS GROUND | 1 |

Standard Items Included:

| Item | Item Description | Ship Qty |
|------|------------------|----------|
| 329470 | LEGACY NEW ETHERNET | 1 |
| 183982 | Welcome Guide | 1 |

Order Number    NY11648966712
Equipment Activation Code

If your shipment includes a Set Top Box, and you need to manually activate,
please call 1-888-897-7499 and provide your zip code and the Activation Code <>




**verizon** ✓    PO Box 16803
Newark, NJ 07101-6803

Presorted
First-Class Mail
U.S. Postage Paid
VERIZON

*Placed in Mailbox on June 4, 2022.*
*Return to sender. No one by this*
*name lives here.*

00000562 01 MM   0.494  VWB15111 0002 XX
RAJDAYE BABWAH
243–10 138 AV
FLR BSM
ROSEDALE, NY  11422

i i4223i822  CC82

VERIZON
210 W. STEWART HUSTON DRIVE
COATESVILLE PA 19320

1 LBS 1 OF 1

SHIP TO: RAJDAYE BABWAH
24310 138 AV
ROSEDALE NY 11422

NY 116 4-01

UPS GROUND

TRACKING # 1Z 5X1 8F2 03 6095 6635

BILLING: P/P

REF NO: VICOG1023267357

B1.5A 07/2008

SEE NOTICE ON REVERSE regarding UPS Terms, and notice of limitation of liability. Where allowed by law, shipper authorizes UPS to act as forwarding agent for export control and customs purposes. If exported from the US, shipper certifies that the commodities, technology or software were exported from the US in accordance with the Export Administration Regulations. Diversion contrary to law is prohibited.
[illegible]

# Exhibit

# H

**Social Security Administration**

Wilkes-Barre Direct Operations Center
PO BOX 7004
WILKES-BARRE PA 18767-7004

**OFFICIAL BUSINESS**
PENALTY FOR PRIVATE USE, $300

FIRST-CLASS MAIL
PRESORTED
POSTAGE & FEES
PAID
SOCIAL SECURITY
ADMINISTRATION
PERMIT NO. G-11

July 2020

No one by this
name lives here.
This person is using
my address.

F6517-3-0005398 C722 00005398    1 AB  0 419 P2 T15

RAJDAYE BABWAH
24310 138TH AVE
ROSEDALE NY 11422-1822



# Social Security Administration
**Wilkes-Barre Direct Operations Center**
PO BOX 7004
WILKES-BARRE PA 18767-7004

**OFFICIAL BUSINESS**
PENALTY FOR PRIVATE USE, $300

FIRST-CLASS MAIL
PRESORTED
POSTAGE & FEES
PAID
SOCIAL SECURITY
ADMINISTRATION
PERMIT NO. G-11

July 2021

 G5774-4-0025562 0729 00025562    1 AB  0.428 P2 T70

RAJDAYE BABWAH
243-10 138TH AVE 2ND FLOOR
ROSEDALE NY 11422-1822

No one by this s
name lives here.
I have been living here
for 15+ years.



# Social Security Administration

**Wilkes-Barre Direct Operations Center**
PO BOX 7004
WILKES-BARRE PA 18767-7004

**OFFICIAL BUSINESS**
PENALTY FOR PRIVATE USE, $300

FIRST-CLASS MAIL
PRESORTED
POSTAGE & FEES
PAID
SOCIAL SECURITY
ADMINISTRATION
PERMIT NO. G-11

S

*July 18, 2022*

*Return to*
*Sender*
*Not at this*
*A l l*



H9463-3-0049904 0629 00049904     1 AB  0.461 P3 T125
RAJDAYE BABWAH
243-10 138TH AVE 2ND FLOOR
ROSEDALE NY 11422-1822

# Exhibit

# I

Department of the Treasury
Internal Revenue Service
Austin, TX 73301-0003

Official Business
Penalty for Private Use, $300

**Notice 1444 (EN-SP)**

**RETURN SERVICE REQUESTED**

**PRESORTED
FIRST-CLASS MAIL**
Postage and Fees Paid
Internal Revenue Service
**PERMIT NO. G-48**

August 2020.
This person does not live
at this address. I have live here for more
than 15 years. No one by this name
has ever lived here or lives
here now. this person is
illegally using my address.
Please do not continue sendi
mail for this person here.

001*B036438*339*60219-01
**RAJDAYE BABWAH**
**243-10 138TH AVE 2ND FLOOR**
**ROSEDALE, NY 11422-1822**

FRONT OF ENVELOPE

Official Business
Penalty for Private Use, $300







Department of the Treasury
Internal Revenue Service
Stop 6525 (SP CIS)
Kansas City MO 64999-0025

037862.261790.398566.14472 1 AV 0.389 634

RAJDAYE BABWAH
243-10 138TH AVE 2ND FLOOR
ROSEDALE NY 11422-1822

037862

PRESORTED
FIRST-CLASS MAIL
POSTAGE AND FEES PAID
IRS
PERMIT NO. G-48

August 2020
NO one by this
name lives here —
this person has
Never lived here.
they are using my
address illegally.

Official Business
Penalty for Private Use. $300

August 2021



Department of the Treasury
Internal Revenue Service
Holtsville, NY 11742-0480

PRESORTED
FIRST-CLASS MAIL
POSTAGE AND FEES PAID
IRS
PERMIT NO. G-48

029504.359124.317840.25252 1 AV 0.398 860

RAJDAYE BABWAH
243-10 138TH AVE 2ND FLOOR
ROSEDALE NY 11422-1822

029504

No one by this name lives here or has ever lived here I have been living here since the house was bought.

Department of the Treasury
Internal Revenue Service
Austin, TX 73301-0003

Official Business
Penalty for Private Use, $300

**Important Tax Information Enclosed**

PRESORTED
FIRST-CLASS MAIL
Postage and Fees Paid
Internal Revenue Service
PERMIT NO. G-48

H2250-1443079 P045 T02962 ········SCH 5-DIGIT 11413
RAJDAYE BABWAH
243-10 138TH AVE 2ND FLOOR
ROSEDALE, NY 11422-1822

3/21/2023
No one in this name
lives here or has ever
lived here. Please stop
sending mails to this
person. My name is
Radika Rampwsad and I
have lives here since 2002

# Exhibit

# J

NEW YORK STATE | **Department of Taxation and Finance**

OPTS-Individual Tax Returns Processing
W A Harriman Campus, Albany NY 12227

August 27, 2021

RAMPERSAD-BASDEO
BABWAH-RAJDAYE
24310 138TH AVE FL 2ND
ROSEDALE NY 11422-1822

572228080Ol·BA00

GAPJSPi ii422

Can you please stop sending these mails. These people etc not live here.

January 2001

PREPAID
FIRST CLASS MAIL
U S POSTAGE
PAID
STATE

Department of the Treasury
**Internal Revenue Service**
Austin, TX 73301-0003

Official Business
Penalty for Private Use, $300

please stop sending people
mail here to these people
they do not live here.

PRESORTED
**FIRST-CLASS MAIL**
Postage and Fees Paid
Internal Revenue Service
**PERMIT NO. G-48**

Basdeo Rampersad
no longer lives here.
Rajdaye Babwah
has never lived
at this address.

NEW AUTO**SCH 5-DIGIT 11413
F1R4H-0271994  1-004                      121/6079/6842
BASDEO RAMPERSAD & RAJDAYE BABWAH
243-10 138TH AVE 2ND FLOOR
ROSEDALE, NY 11422-1822



February 2021

**New York State Department of**
## Taxation and Finance

Collections and Civil Enforcement Divis

7/20/2022

**Correspondence Acknowledgment Notil**

K-231584568-3
RAMPERSAD-BASDEO
BABWAH-RAJDAYE
24310 138TH AVE FL 2ND
ROSEDALE NY 11422-1822

*Neither of these people lives at this address. Basdeo Rampersad has not lived here since 2019. Rajdaye Babwah has never lived here. Please stop sending mail.*

EAPJSPi ii422

# Exhibit

# K

Certificate #: U-000018874-F



# QUEENS CRIMINAL COURT

125-01 Queens Boulevard, Kew Gardens, NY 11415

Phone: (718) 298-0792 Fax: (718) 520-2451

Court ORI: NY040033J

## FEE
### Non-Public Version

| | |
|---|---|
| The People of the State of New York <br> vs. <br><br> **Basdeo Rampersad** | **Certificate of Disposition** <br> **Docket Number:** CR-018833-19QN <br><br> **CJTN:** 069047702L <br> **NYSID:** 00333360Z |

Defendant DOB: 11/04/1971          Arrest Date: 06/13/2019          Arraignment Date: 06/13/2019

THIS IS TO CERTIFY that the undersigned has examined the files of the Queens Criminal Court concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 120.00 01 AM Aslt 3-W/Int Cause Phys Injury **SEALED 160.55** | AM | Covered by (Count #3) | 09/24/2019 |
| 2 | PL 240.26 01 V Harassment-2nd:Physical Cntact **SEALED 160.55** | V | Covered by (Count #3) | 09/24/2019 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 3 | 06/09/2019 | PL 240.20 **SEALED 160.55** | Disorderly Conduct | V | Pled Guilty | 09/24/2019 | • Conditional Discharge (1 Years) <br> • Surcharge (CVAF ($25.00), MS ($95.00) - due 01/07/2020) |

**All fines, fees & surcharges imposed at sentence are paid in full.**

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: August 12, 2021          Chief Clerk/Clerk of the Court

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law, in connection with the licensing, employment or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 or 160.59 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. [Executive Law § 296 (16)]

Conviction charges may not be the same as the original arrest charges.

Charges may not be the same as the original arrest charges.

CPL 160.55.          Official records related to the arrest and prosecution on file with the Division of Criminal Justice Services, police agencies and/or the prosecutor's office are sealed, however, court records remain available for public inspection.

# Exhibit

# L


**CONFIDENTIAL**

| | | | |
|---|---|---|---|
| RAMPERSAD, RADIKA | MRN/VisitId: | DOB: | Age: 47y Gender : Female |
| LVS ED | Admit Date: 09-Jun-2019 | Provider: Ewy, Joseph | DSC |

# ED Provider Note

Last Updated: 6/10/2019 1:54:09 AM   [Entered: 6/10/2019 12:22:00 AM]   Authored By: Ewy, Joseph (Attending)

**HISTORY OF PRESENT ILLNESS:**
**High Risk Travel:**
International Travel? No*:

**Preferred Language to Address Healthcare:**
• Preferred Language to Address          English
  Healthcare

**Child Abuse Assessment (patients less than 13 yrs):**
Chief Complaint: assault.

• **Chief Complaint:** The patient is a 45y Female complaining of assault
• **HPI Objective Statement:** 45 yo F s/p assault by Ex-husband, whom she lives with.
  Ex-husband came home (they live together), reportedly drunk, started a verbal argument with
  patient. Verbal argument turned to physical scuffle. In the process pt. was scraped on R upper
  arm and L lower arm. + bleeding from both sites. Pt has a bruise on R lateral mid thigh from
  falling down. No weapon use or direct head trauma, no LOC. Pt. feels shaken up, but
  otherwise well, at the moment. Police are present in ER now, pt. made a police report, but
  ex-husband fled the scene before cops arrived.
  ROS: negative for fever, cough, headache, chest pain, shortness of breath, abd pain, nausea,
  vomiting, diarrhea, rash, paresthesia, and weakness--all other systems reviewed are negative.
  No sexual assault reported. Pt says she needs to make a few calls to secure a safe place on
  discharge from ER.
PMH: HLD; Meds: Denies; SH: Denies smoking/drinking/drug use

**HIV:**
**HIV Status:**
• Offered: Declined

**PAST MEDICAL/SURGICAL/FAMILY/SOCIAL HISTORY:**
**Tobacco Usage:**
• Tobacco Usage          Never smoker

**ALLERGIES AND HOME MEDICATIONS:**
**Allergies:**
  **Allergies:**
    No Known Allergies:

**Home Medications:**
* *Patient Currently Takes Medications as of 07-Aug-2017 16:49 documented in Structured Notes*
    • melatonin 3 mg oral tablet: 1 tab(s) orally once a day (at bedtime), As needed, Insomnia

**PHYSICAL EXAM:**
• Physical Examination: Vitals: WNL
  Gen: AAOx3, NAD, sitting comfortably in stretcher, calm, cooperative, non-toxic
  Head: ncat, perrla, eomi b/l, no evidence of direct trauma
  Neck: superficial linear abrasion to R neck 3 cm in length, otherwise supple, no

**This is not an official part of the medical record. Please discard it in a confidential document bin.**

Requested By: Haynes-Brown, Romelia          JobID:                    Print from: LVS Misc
(Support Services)

8/12/2021 03:15:00 PM                                                  Page 1 of 75



**Northwell Health**
**Documents Review Report**

CONFIDENTIAL

| RAMPERSAD, RADIKA | MRN/VisitId: | DOB: | Age: 47y Gender : Female |
| LVS ED | Admit Date: 09-Jun-2019 | Provider: Ewy, Joseph | DSC |

# ED Provider Note

Last Updated: 6/10/2019 1:54:09 AM  [Entered: 6/10/2019 12:22:00 AM]  Authored By: Ewy, Joseph (Attending)

lymphadenopathy, no midline deviation, normal rom
Heart: rrr, no m/r/g
Lungs: CTA b/l, no rales/ronchi/wheezes
Abd: soft, nontender, non-distended, no rebound or guarding
Ext: no clubbing/cyanosis/edema, normal rom of all ext, no gross bony deformities
Neuro: sensation and muscle strength intact b/l, steady gait
derm: LUE lateral superficial linear skin avulsion 5 cm in length, another L lateral forearm linear
skin avulsion 5 cm in length. minimal active bleeding, both areas are tender to palpation.
another 10x7 cm skin hematoma to R lateral mid thigh. no broken skin

## CURRENT ORDERS/ORDER ENTRY:
* BACitracin Ointment, 1 Application(s), Topical, Once, To affected area, Stop After 1 Doses
  Indication: avulsion
  Administration Instructions: external use only
  This is a Look-alike/Sound-alike Medication
  Provider's Contact #: 516 256-6350, 10-Jun-2019, Active  Standard
* acetaminophen  Tablet ..., [Known as TYLENOL..]
  975 milliGRAM(s), Oral, once, Stop After 1 Doses
  Administration Instructions: MAX DAILY DOSE:  ADULT = 4,000 mG/Day, 10-Jun-2019, Active
  Standard
* diphtheria/tetanus/pertussis (acellular) Vaccine (ADAcel), [Ordered as ADAcel]
  0.5 milliLiter(s), IntraMuscular, once, Stop After 1 Doses
  Administration Instructions: Shake well and refrigerate
  If vaccine is to be given at time of discharge, please allow a minimum of 30 minutes for patient
  observation.
  Provider's Contact #: 516 256-6350, 10-Jun-2019, Active  Standard

## PROGRESS NOTE:
Date: 10-Jun-2019 01:53.

Progress: Improved. Pt. reports feeling better after meds, has a safe place to go to stay tonight (friend's
house--arranged via telephone while in ER). pt. refuses SW at this time. made police reports while police were in
ER--she feels safe leaving ER at this time.
pt. agrees to f/u with primary care outpt.
pt. understands to return to ED if symptoms worsen; will d/c.

## DISPOSITION:
**Care Plan - Instructions:**
Principal Discharge DX: Skin avulsion
Secondary Diagnosis:  Assault
Secondary Diagnosis:  Domestic violence of adult, initial encounter.

**Impression:**
Principal Discharge Dx Skin avulsion.

Secondary Discharge Dx Assault.

This is not an official part of the medical record. Please discard it in a confidential document bin.

Requested By: Haynes-Brown, Romelia          JobID:          Print from: LVS Misc
(Support Services)

8/12/2021 03:15:00 PM                                          Page 2 of 25

# Exhibit

# M

Certificate #: U-000018871-F



# QUEENS CRIMINAL COURT

125-01 Queens Boulevard, Kew Gardens, NY 11415

Phone: (718) 298-0792 Fax: (718) 520-2451

**FEE**
Non-Public
Version

Court ORI: NY040033J

The People of the State of New York

vs.

**Basdeo Rampersad**

**Certificate of Disposition**
Docket Number: **CR-015004-20QN**

CJTN: 069428036P
NYSID: 00333360Z

Defendant DOB: **11/04/1971**

Arrest Date: **08/27/2020**   Arraignment Date: **08/27/2020**

THIS IS TO CERTIFY that the undersigned has examined the files of the Queens Criminal Court concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 215.50 03 AM Crim Contempt-2nd:Disobey Crt **SEALED 160.55** | AM | Covered by (Count #2) | 11/06/2020 |
| 3 | PL 215.50 03 AM Crim Contempt-2nd:Disobey Crt **SEALED 160.55** | AM | Covered by (Count #2) | 11/06/2020 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 2 | 08/06/2020 | PL 240.26 **SEALED 160.55** | Harassment-2nd | V | Pled Guilty | 11/06/2020 | • Conditional Discharge (1 Years) • Surcharge (CVAF ($25.00), MS ($95.00) - due 01/12/2021) |

A balance remains due and owing for fines, fees and/or surcharges imposed at sentence.
Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, bF, CF, DF, EF=Class Felony

Dated: **August 12, 2021**                          Chief Clerk/Clerk of the Court

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 –including any appearing on this certificate of disposition– are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise–unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, in connection with the licensing, employment or providing of credit by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law, in connection with the licensing, employment or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law, provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. [Executive Law § 296 (16)]

Conviction charges may not be the same as the original arrest charges.
Charges may not be the same as the original arrest charges.
CPL 160.55:         Official records related to the arrest and prosecution on file with the Division of Criminal Justice Services, police agencies and/or the prosecutor's office are sealed, however, court records remain available for public inspection.

# Exhibit

# N



# QUEENS CRIMINAL COURT

125-01 Queens Boulevard, Kew Gardens, NY 11415

Phone: (718) 298-0792 Fax: (718) 520-2451

**FEE**
Non-Public
Version

Court ORI: NY040033J

The People of the State of New York

vs.

**Basdeo Rampersad**

**Certificate of Disposition**

| | |
|---|---|
| Docket Number: | CR-022337-19QN |
| CJTN: | 069083880K |
| NYSID: | 00333360Z |

Defendant DOB: **11/04/1971**

Arrest Date: **07/16/2019**

Arraignment Date: **07/16/2019**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Queens Criminal Court** concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 215.50 03 AM Crim Contempt-2nd:Disobey Crt **SEALED 160.55** | AM | Covered by (Count #2) | 09/24/2019 |

| Count # | Incident Date | Conviction Charge | Conviction Charge Description | Charge Weight | Conviction Type | Conviction/Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 2 | 07/08/2019 | PL 240.20 **SEALED 160.55** | Disorderly Conduct | V | Pled Guilty | 09/24/2019 | • Conditional Discharge (1 Years)<br>• Surcharge (CVAF ($25.00), MS ($95.00) - due 01/07/2020) |

All fines, fees & surcharges imposed at sentence are paid in full.

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Dated: **August 12, 2021**

Chief Clerk/Clerk of the Court

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute. It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law, in connection with the licensing, employment or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. [Executive Law § 296 (16)]

Conviction charges may not be the same as the original arrest charges.

Charges may not be the same as the original arrest charges.

CPL 160.55:     Official records related to the arrest and prosecution on file with the Division of Criminal Justice Services, police agencies and/or the prosecutor's office are sealed, however, court records remain available for public inspection.

# Exhibit
# O



# QUEENS CRIMINAL COURT

125-01 Queens Boulevard, Kew Gardens, NY 11415

Phone: (718) 298-0792  Fax: (718) 520-2451

**FEE**
Non-Public
Version

Court ORI: NY040033J

| | |
|---|---|
| The People of the State of New York<br>vs.<br>**Basdeo Rampersad** | **Certificate of Disposition**<br>Docket Number: CR-009520-20QN<br><br>CJTN: 069359878P<br>NYSID: 00333360Z |

Defendant DOB: **11/04/1971**

Arrest Date: **05/20/2020**     Arraignment Date: **05/20/2020**

THIS IS TO CERTIFY that the undersigned has examined the files of the Queens Criminal Court concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 215.50 03 AM Crim Contempt-2nd:Disobey Crt | AM | Covered by (Count #2) | 08/18/2020 |

| Count # | Incident Date | Sentence Charge | Charge Description | Charge Weight | Conviction Type | Conviction/ n/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 2 | 03/11/2020 | PL 240.20 | Disorderly Conduct | V | Pled Guilty | 08/18/2020 | • Surcharge (CVAF ($25.00), MS ($95.00) - due 10/22/2020)<br>• Conditional Discharge (1 Years) |

A balance remains due and owing for fines, fees and/or surcharges imposed at sentence.

Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, DF, CF, BF, EF=Class Felony

Dated:  **August 12, 2021**

Chief Clerk/Clerk of the Court

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute.
Conviction charges may not be the same as the original arrest charges.
Charges may not be the same as the original arrest charges.

# Exhibit

# P

Certificate #: U-000018870-F



# QUEENS CRIMINAL COURT

125-01 Queens Boulevard, Kew Gardens, NY 11415
Phone: (718) 298-0792 Fax: (718) 520-2451

Court ORI: NY040033J

FEE
Non-Public
Version

**Certificate of Disposition**

The People of the State of New York

vs.

**Basdeo Rampersad**

Docket Number: **CR-008641-21QN**

CJTN: **069622510H**

NYSID: **00333360Z**

Arrest Date: **04/29/2021**   Arraignment Date: **04/29/2021**

Defendant DOB: **11/04/1971**

THIS IS TO CERTIFY that the undersigned has examined the files of the Queens Criminal Court concerning the above entitled matter and finds the following:

| Count # | Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 215.50 03 AM Crim Contempt-2nd:Disobey Crt | AM | Covered by (Count #2) | 06/21/2021 |

| Count # | Incident Date | Sentence Charge | Charge Description | Charge Weight | Conviction Type | Conviction n/ Sentence Date | Sentence Highlight |
|---|---|---|---|---|---|---|---|
| 2 | 03/20/2021 | PL 240.20 | Disorderly Conduct | V | Pled Guilty | 06/21/2021 | • Conditional Discharge (1 Years) • Surcharge (CVAF ($25.00), MS ($95.00) - due 09/10/2021) |

All fines, fees & surcharges imposed at sentence are paid in full.
Charge Weight Key: I=Infraction; V=Violation; AM, BM=Class Misdemeanor; UM=Unclassified Misdemeanor; AF, BF, CF, DF, EF=Class Felony

Chief Clerk/Clerk of the Court

Dated: **August 12, 2021**

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

All marijuana convictions under PL 221.05, PL 221.10, PL 221.15, PL 221.20, PL 221.35 or PL 221.40 —including any appearing on this certificate of disposition— are vacated, dismissed, sealed, and expunged. It is an unlawful discriminatory practice for any entity to make any inquiry about such an expunged conviction or to use such an expunged conviction adversely against an individual in any form of application or otherwise—unless specifically required or permitted to do so by statute.
Conviction charges may not be the same as the original arrest charges.
Charges may not be the same as the original arrest charges.

# Exhibit

# Q

Criminal Form 1 1/2020

NYSID No: 003333367Z

CJTN No: 06962251011

PRESENT   Honorable Danielle L Hartman

PEOPLE OF THE STATE OF NEW YORK
- against -
Basdeo Rampersad ,
Defendant

DOB: 11/04/1971

ORDER OF PROTECTION
Family Offense - C.P.L. 530.12

☐ Youthful Offender (check if applicable)
Part PH2        Case No   CR-008641-21QN

Defendant Present in Court

NOTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY RESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CONTEMPT OF COURT. IF THIS IS A TEMPORARY ORDER OF PROTECTION AND YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND CONTINUE IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

THIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR COMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR TERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS ORDER.

☐ TEMPORARY ORDER OF PROTECTION - Whereas good cause has been shown for the issuance of a temporary order of protection

☒ ORDER OF PROTECTION - Whereas defendant has been convicted of [specify crime or violation]:

PL 240.20 V Disorderly Conduct, 1 count(s) of Viol

And the Court having made a determination in accordance with section 530.12 of the Criminal Procedure Law,

IT IS HEREBY ORDERED that the above-named defendant Basdeo Rampersad (DOB: 11/04/1971) observe the following conditions of behavior:

[01]   Stay away from [A]    RADIKA RAMPERSAD,

   [B]   the home of RADIKA RAMPERSAD;

   [C]   the school of RADIKA RAMPERSAD;

   [D]   the business of RADIKA RAMPERSAD;

   [E]   the place of employment of RADIKA RAMPERSAD;

[14]   Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with RADIKA RAMPERSAD;

[02]   Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion, unlawful dissemination or publication of intimate image(s) or any criminal offense against RADIKA RAMPERSAD;

[12]   Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not limited to, the following: ALL and do not obtain any further guns or other firearms. Such surrender shall take place immediately, but in no event later than IMMEDIATELY at LOCAL PCT.

IT IS FURTHER ORDERED that the above-named Defendant's license to carry, possess, repair, sell or otherwise dispose of a firearm or firearms, if any, pursuant to Penal Law §400.00, is hereby [13A] suspended; and [13C] the Defendant shall remain ineligible to receive a firearm license during the period of this order

IT IS FURTHER ORDERED that this order of protection shall remain in force until and including 06/20/2023

DATED: 06/21/2021

HON. DANIELLE HARTMAN

Honorable Danielle L Hartman

☒ Defendant advised in Court of issuance and contents of Order

☐ Order to be served by other means [specify]: _____

☐ Warrant issued for Defendant

☒ Order personally served on Defendant in Court

VIDEO

☐ ADDITIONAL SERVICE INFORMATION [specify]: _____

The Criminal Procedure Law provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties shall authorize and in some situations may require, such officer to arrest a defendant who is alleged to have violated its terms and to bring him or her before the Court to face penalties authorized by law.

Federal law requires that this order be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or possession of the United States, if the person against whom the order is sought is an statutory partner of the protected party and has been or will be afforded reasonable notice and opportunity to be heard in accordance with state law sufficient to protect that person's rights (18 USC §1139A, 2266)

It is a federal crime to:

• cross state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;

• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law enforcement officers but only while they are on duty); and

• buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of physical force or a deadly weapon against an intimate partner or family member, even after this Order has expired (18 U.S.C. 922(g)(8), 922(g)(9), 2261, 2261A, 2262)

Exhibit

R

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF QUEENS

------------------------------------------------------------x   Index No.: 11063/2017

RADIKA RAMPERSAD,

<div align="center">Plaintiff,</div>

<div align="center"><strong>STIPULATION OF<br>SETTLEMENT</strong></div>

    -against-

**BASDEO RAMPERSAD,**

<div align="center">Defendant.</div>

------------------------------------------------------------x

THIS STIPULATION OF SETTLEMENT (hereinafter referred to as the "Stipulation"), made the 12th day of December, 2017 ~~and the ____ day of November, 2017~~, by and between, RADIKA RAMPERSAD, Social Security Number ████████, residing at 243-10 138th Avenue Rosedale, NY 11422 (hereinafter referred to as the "Wife") and, BASDEO RAMPERSAD Social Security Number ████████, residing at 243-10 138th Avenue, Rosedale, NY 11422 (hereinafter referred to as the "Husband"), the Husband and Wife together sometimes being referred to as the "parties".

<div align="center"><u>W I T N E S S E T H</u>:</div>

WHEREAS, the parties were married to each other on 13th day of March, 1993 in Couva, Republic of Trinidad and Tobago; and

WHEREAS, there are two (2) children of the marriage and one of the children is fully emancipated (Paul Rampersad, age 23) and one child Sarah Ruth Rampersad, born ████ ████ resides with the parties. No other children are expected; and

WHEREAS, the Wife has instituted an action for a divorce against the Husband, which is now pending in the Supreme Court of New York State, County of Queens, and is

<div align="center">1</div>

designated by Index No. 11063 /2017, wherein the Wife prays for a judgment of divorce against the Husband;

WHEREAS, in entering this Stipulation of Settlement, the Plaintiff and the Defendant acknowledge that he or she has in no way relied upon any attorney certification of any factual submission or submissions, financial or otherwise, made by the Plaintiff's and Defendant's attorney. The Plaintiff and the Defendant both acknowledge it is his or her understanding that such attorney certification was made by the Plaintiff's and Defendant's attorney solely and exclusively to the Court, and may not and should not be relied upon by either party in assessing the credibility of the submission or deciding whether or on what terms to settle this matter. The Plaintiff and Defendant further acknowledge that he and she would have entered into this settlement on precisely the same terms, even in absence of any attorney certification by the Plaintiff's and the Defendant's attorney; and

WHEREAS, the parties intend to settle all claims with respect to property, support and other issues arising from their marriage or otherwise in accordance with the terms of this Stipulation, and both having had the opportunity to seek independent legal advice to become fully and independently advised of their respective legal rights, remedies, privileges and obligations, including any rights under the Domestic Relations Law of the State of New York arising out of the marriage relationship or otherwise and each, in addition thereto, having had the opportunity to make independent inquiry and investigation with respect to the other's assets, property, income and expenses, and of the marital and separate property of the parties;

NOW, THEREFORE, in consideration of the promises and agreements hereinafter set forth, it is hereby stipulated, covenanted and agreed by and between the parties, as follows:

## ARTICLE I

### SEPARATE RESIDENCE

The parties continue to reside in the marital residence and in arriving at the instant settlement, have agreed upon a plan which, upon carrying out the provisions herein, shall result in the parties thereafter living separate and apart.

Notwithstanding, it is, and shall be, lawful for the parties hereto at all times to live separate and apart from each other and except as otherwise set forth herein, to reside from time to time at such place and places as each of such parties may see fit and to contract, carry on and engage in any employment, business or trade which either may deem fit, free from control, restraint or interference, direct or indirect, by the other in all respects as if such parties were single and unmarried.

## ARTICLE II

### NO MOLESTATION

Neither party shall in any way molest, disturb, harass or trouble the other or interfere with the peace and comfort of the other, or compel or seek to compel the other to associate, cohabit or dwell with him or her.

## ARTICLE III

### MUTUAL RELEASE AND DISCHARGE OF GENERAL CLAIMS

Except as otherwise expressly set forth herein, each party hereby remises, releases and forever discharges the other from all causes of action, claims, rights, and demands whatsoever, in law or in equity, known or unknown, past, present or future, which either of the parties hereto ever had, now has or hereafter may have against the other, including without limitation

3

all claims with respect to all marital property as that term is used in Domestic Relations Law §236, and as interpreted or arising out of the marital relationship except any cause of action for divorce, annulment or separation, and any defenses thereto in any pending or future action and except any cause of action arising out of or in connection with the breach of this agreement.

Furthermore, the parties acknowledge and agree that this general release is intended to include that marital property to which each party may be entitled to an equitable distribution by virtue of the Equitable Distribution Law of the State of New York, effective July 19, 1980.

## ARTICLE IV

## MUTUAL RELEASE AND DISCHARGE OF CLAIMS IN ESTATES

Each party hereby irrevocably releases, waives, and relinquishes any and all present and future rights under the present or future laws of any jurisdiction or under any Will or testamentary writing now or hereafter in existence to share in and act as executor, administrator or trustee without limitations, in any capacity or for any reason with any right which may now or hereafter exist.

This provision shall constitute a mutual waiver by the parties to take under any existing Will or testamentary writings, now or hereafter in force, under the present or future laws of any jurisdiction, and without limiting the foregoing, to relinquish any and all rights in and to each other's estate, including but not limited to, all rights of power, the right of set-off now provided in §5-3.1 of the Estates, Powers and Trusts Law of the State of New York, all distributive shares presently provided in §4-1.1 of said statute, all rights of election presently set forth in §5-1.1(A) of said statute, and any prior, presently existing or subsequent similar provision of law of this or any other jurisdiction.

However, the foregoing shall not bar any claim on the part of either party for any cause arising out of a breach of this agreement during the lifetime of the deceased party against whose

estate such a claim may be made, in addition to any other remedies which may be available.

Notwithstanding the foregoing, each party shall have the right to make such a Will as he or she chooses and to make the other a beneficiary and/or fiduciary of his or her estate.

## ARTICLE V

## CHANGE OF ADDRESS

The parties hereby agree that each will notify the other in writing of any change of address, and/or telephone number within five (5) days of the date of such change for so long as either party is obligated to the other pursuant to the terms of this Agreement.

## ARTICLE VI

## DEBTS OF PARTIES

The Wife represents, warrants and covenants that she has not heretofore, nor will she hereafter, incur or contract any debt, charge, obligation or liability whatsoever for which the Husband, his legal representatives of his property or estate is or may become liable, except as specifically provided herein. Upon execution of this Stipulation, the Wife shall surrender all credit cards in her possession or under her dominion and control for which the Husband may be liable. The Wife agrees to pay, satisfy and discharge any and all debts, liabilities and obligations in her own individual name.

The Husband represents, warrants and covenants that he has not heretofore, nor will he hereafter, incur or contract any debt, charge, obligation or liability whatsoever for which the Wife, her legal representatives of his property or estate is or may become liable, except as specifically provided herein. Upon execution of this Stipulation, the Husband shall surrender all credit cards in his possession or under his dominion and control for which the Wife may be liable. The Husband agrees to pay, satisfy and discharge any and all debts, liabilities and

obligations in his own individual name.

The Wife represents and agrees that except as otherwise provided herein she has not heretofore, nor will she hereafter, incur or contract any debt, charge, obligation or liability whatsoever for which the Husband, his legal representatives or his property or estate is or may become liable. The Wife agrees to pay, satisfy and discharge any and all debts, liabilities and obligations in her individual name and indemnify and hold the husband harmless of and from all loss, expense (including reasonable attorney's fees) and damages in connection with or arising out of a breach by the Wife of the foregoing.

The Husband represents and agrees that except as otherwise provided herein he has not heretofore, nor will he hereafter, incur or contract any debt, charge, obligation or liability whatsoever for which the Wife, her legal representatives or her property or estate is or may become liable. The Husband agrees to pay, satisfy and discharge any and all debts, liabilities and obligations in his individual name and indemnify and hold the Wife harmless of and from all loss, expense (including reasonable attorney's fees) and damages in connection with or arising out of a breach by the Husband of the foregoing.

## ARTICLE VII

## MAINTENANCE

Both parties acknowledge that they have read and understand the terms of the Notice of Guideline Maintenance, and his/her right to receive maintenance from the other spouse pursuant to the law enacted in January 2016, pursuant to DRL §236 (B)((6).

The parties acknowledge the Husband had W-2 earnings in 2016 of approximately $73,000.00. The parties acknowledge the Wife is not working, and has not worked in some period of time, but has the present ability to be employed.

The Husband represents, acknowledges and agrees that based upon his current and

anticipated future financial circumstances, as well as the provisions of this Stipulation of Settlement, he has the ability to provide for his own reasonable needs without spousal maintenance from the Wife. The Husband hereby waives any and all claims for past, present and future spousal maintenance.

The parties agree that the Husband shall pay, and the Wife shall receive from the Husband the sum of $600.00 (Six hundred and 00/100 dollars) per month in monthly maintenance. This payment shall begin on the first day of the first month after the real estate closing (but in no event shall the payments start later than February 1, 2018) and continue each and every month thereafter until the passage of 6 (six) years, the death of the Wife, or the death of the Husband. Payments shall be made to the address provided to Husband by the Wife by check, or money order, unless the parties agree and reduce any modification to writing. Payments not specifically labeled as for "maintenance" shall not be credited against Husband's obligation and Wife is not responsible to return any overpayments in the event same should be paid to Wife.

· The parties' intend this Agreement regarding maintenance to resolve the issue of maintenance, same being fair and reasonable and representing the agreement of the parties given the totality of circumstances known to the parties and the overall terms of this agreement.

Husband further agrees to maintain Life Insurance in the approximate face value of the policy of $70,000.00 to secure this obligation (and his obligation for child support). Husband shall provide annual proof said policy is in full force and effect. The obligation to maintain the policy naming the wife as beneficiary shall cease upon full payment of the maintenance obligation as outlined herein. In the event of the death of the Husband prior to the end of the term of maintenance, Wife shall receive the remaining monies owed to her under the agreement for maintenance herein, and any remaining monies under said policy shall belong to Husband's

7

estate.

The payment of maintenance shall be taxable income to the Wife and tax deductible by the Husband to the extent allowed by law. The unequivocal obligation of the Husband to pay maintenance shall not be dischargeable in bankruptcy.

In the unlikely event of non-payment, the Wife shall have the right to collect from any and all assets or sources of income of the Husband including but not limited to his 401K, earnings, bank accounts, real or personal property. In addition to other remedies, Wife shall have the right to file an income execution order to protect her legal interests. Wife shall be further entitled to collect reasonable and necessary attorney fees occasioned by the Husband's failure to timely comply with the provisions of this agreement.

In so accepting all of the provisions of this Agreement, the Wife and the Husband specifically acknowledge that they have had a full and fair opportunity to conduct financial disclosure proceedings in the pending action between the parties, and have conducted such proceedings to the extent they wished. The parties acknowledge the Wife is not working and essentially has little to no assets titled in her name. Husband represents that the assets listed in this Agreement are the only assets in his name, jointly held, or held by another for which he has a legal interest. Husband understands this representation is a material representation and the Wife's agreement to enter into this agreement is in reliance upon the Husband's full and complete listing of all assets herein. To the extent the Husband has failed to list any other bank account, real property, pre-retirement or post-retirement asset of any kind and wheresoever situated – Wife does not waive her right to equitable distribution of any and all 'after-discovered assets' of whatsoever kind. Based upon those truthful representations, the parties hereby accept all the terms and conditions of this Agreement as being fair and equitable and constituting fair and equitable distribution of the marital property of the parties that is subject

to distribution under and pursuant to Domestic Relations Law of the State of New York as now in effect or as hereafter amended.

In negotiating, determining and agreeing upon the provisions of this Article, the Husband and Wife each specifically represent, warrant and acknowledge that they have agreed upon all of the terms and conditions set forth above based in all respects upon due, deliberate and informed consideration as to their respective property, income, means and needs, as well as the ability and means of both the Husband and Wife, both at present, and in the future. The parties further acknowledge that they have considered in all respects any and all issues, questions and other matters relating to this Agreement and each and every provision thereof, including, but not limited to, the following factors:

(a) The income and property of the respective parties including marital property distributed pursuant to the terms of this Agreement;

(b) The length of the marriage;

(c) The age and health of both parties;

(d) The present and future earning capacity of both parties;

(e) The need of one party to incur education or training expenses;

(f) The existence and duration of a pre-marital joint household or a pre-divorce separate household;

(g) Acts by one party against another that have inhibited or continue to inhibit a party's earning capacity or ability to obtain meaningful employment, including but not limited to acts of domestic violence as provided in section four hundred fifty-nine-a (§459-a) of the Social Services Law;

(h) The ability of the party seeking maintenance to become self-supporting and, if applicable, the period of time and training necessary therefore;

9

(i)     Reduced or lost lifetime earning capacity of the party seeking maintenance as a result of having foregone or delayed education, training, employment, or career opportunities during the marriage;

(j)     The inability of one party to obtain meaningful employment due to age or absence from the workforce;

(k)     The tax consequences of this Agreement to each party;

(l)     The equitable distribution of marital property pursuant to this Agreement;

(m)     Contributions and services of the party seeking maintenance as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;

(n)     The wasteful dissipation of marital property by either party, if any;

(o)     The transfer or encumbrance made in contemplation of a matrimonial action without fair consideration;

(p)     The loss of health insurance benefits upon dissolution of the marriage, and the availability and cost of medical insurance for the parties; and

(q)     Any and all other issues, matters or factors not hereinafter specifically enumerated arising out of, incidental to or as a result of the relationship of the parties as Husband and Wife.

## ARTICLE VIII

## EQUITABLE DISTRIBUTION, DISTRIBUTIVE AWARD,

## DIVISION OF ASSETS, AND DEBTS

The parties intend this Agreement to constitute an Agreement pursuant to Domestic Relations Law, Section 236(B)(3) and its provisions to be in lieu of each of their respective rights, pursuant to all aspects of Domestic Relations Law, Section 236B. Accordingly, the parties mutually waive their rights and release each other from any claims for maintenance, distribution of marital property, distributive awards, special relief or claims regarding separate property or increase in the value thereof, not specifically listed herein. The parties hereby waive any claim to any properties, real or personal, not specifically listed herein.

The parties intend that their real and personal property division, as provided in this Agreement, shall be final and irrevocable. Unless the parties execute a formal amendment to this Agreement, in writing, it is their intention that the Wife's separate property shall forever remain hers and the Husband's separate property shall forever remain his notwithstanding (a) the reconciliation of the parties; (b) the rescission or termination of this Agreement; or (c) a remarriage of the parties, in the event they are divorced; except to the extent of a material failure to disclose asset(s)(after discovered asset not listed herein) by a party to this Agreement which, if discovered, shall constitute a basis to seek equitable distribution of said asset(s).

The parties acknowledge and agree that the provisions of this Agreement represent and set forth a fair, reasonable and equitable distribution of their rights, maintenance, support, necessaries, property and other rights arising from their joint legal title to certain property or from the marital relationship or otherwise, and further acknowledge and agree that said division of property and other payments provided for in this Stipulation represent an agreeable

11

and equitable division of said support, maintenance and any and all other respective rights shall henceforth be governed solely by this Stipulation.

The parties have identified and evaluated their "marital property" as well as their "separate property" and have arrived at an allocation of their "marital" property which they deem to be an equitable distribution.

The following is a list of property as identified by the parties to the extent that the same has been accrued during the marriage:

1. Marital residence located at 243-10 138th Avenue, Rosedale, N.Y. 11422 held in the name of Swarsati Ramnaraine (Plaintiff's mother) and Radika Rampersad (Plaintiff). The house is subject to a first mortgage (balance) of $376,268.80 held by Bank of America and a second mortgage (HELOC) also held by Bank of America in the approximate amount of $45,219.21 (balance).

2. Furniture, furnishings, and contents of the marital residence;

3. RCN Cable Retirement Savings Plan (401K) with an approximate account balance of $180,429.53 as of October 31, 2017.

4. Bank accounts – Joint account at Bank of America (ending 1283) with a balance of approximately $50.00 as of October 24, 2017. Capital One Bank account ending 6908 with an approximate $0 balance as of November 1, 2017.

5. Automobiles - 2001 Chevy Suburban and 2009 Chevy Suburban (both titled in name of Husband)

A. Personal Property

Wife shall retain as her sole and separate property all household furniture, furnishings, jewelry, art work, pictures and other tangible items set forth on Schedule "A". Wife shall be permitted to remove the items on Schedule "A" from the marital residence located at 243-10

12

138th Avenue, Rosedale, N.Y. 11422, at any time up to an including but also no later than 30 days after the date of the real estate closing, wherein Husband shall buy-out Wife. The parties may agree to extend the time in a writing so long as same is signed and dated by both parties.

The Husband shall retain all the household furniture, furnishings, jewelry, art work, pictures and other tangible items located in the marital residence except those items listed on Schedule A.

The parties' agree that the personal property/possessions of the minor child shall be removed by the Wife (in contemplation of the minor child relocating with the Mother).

Except as otherwise provided, each of the parties shall hereafter own, have and enjoy independently of any claim or right of the other party all items of personal property now or hereinafter belonging to him or her and now or hereinafter in his or her possession with full power to dispose of the same as fully and effectively as though he or she were unmarried.

B.    Vehicles

The parties hereby acknowledge that the Husband is now in possession of and has title to the following vehicles: 1) 2001 Chevy Suburban and 2) 2009 Chevy Suburban.

The vehicles listed above were acquired during the marriage with marital funds.  The parties agree that said vehicles will continue to be in the Husband's possession and titled to him and that he shall continue to be the sole owner of the vehicles.  The Wife hereby waives any and all interest she may have in said vehicle. The Husband agrees that he shall assume all liability for said vehicle, including but not limited to responsibility for insuring said vehicle and shall hold the Wife harmless from any actions arising from any obligations or liabilities from said vehicle.

C.    Marital Residence

The parties acknowledge that Plaintiff is the titled owner of the real property located at 243-10 138th Avenue, Rosedale, N.Y. 11420, (hereinafter at times referred to as "marital

13

residence"). The parties further acknowledge this property to be a marital asset. The parties acknowledge that the marital residence has an approximate fair market value of $ 650,000.00. The parties still reside together at the marital residence with the minor child.

The parties' represent that there is an existing mortgage on the marital residence, held by Bank of America in an approximate amount owed of 376,268.80, with a monthly payment of $3,085.12. The parties further acknowledge the HELOC second mortgage with an approximate amount owed of $45,219.21 and a monthly paymemnt of $394.03. Plaintiff's mother is also listed on the mortgage(s) but not on title.

The parties further represent that, are no other present or anticipated judgments, liens, claims or encumbrances of any kind or nature against the marital residence which either party has actively pursued or have arisen from acts committed by him or her or as a result of his or her residence or ownership therein.

The parties hereby acknowledge that it is their intention for the HUSBAND to be the sole owner of the marital residence. For the purposes of settlement, the parties agree that the marital residence has approximately $200,000.00 in net equity, a sum which was derived from a review of current comparable sales of the area. It is acknowledged that WIFE is otherwise entitled to receive 50% of the net equity in the marital residence, which amounts to approximately $100,000.00 representing ½ of the agreed upon appraised value of the marital residence. In consideration of the Wife waiving all right, title, and interest in the marital residence, the Wife shall receive the following: $100,000.00 – less Seller's customary title bill (NYC/NYS Transfer Tax only).

Accordingly, the parties have recently retained separate real estate attorneys and have entered into a real estate sales contract for the purpose of effectuating the transfer of title, buy-out of the Wife, and settlement of equitable distribution. Husband is in the process of applying

14

for the requisite mortgage financing to complete the contemplated transfer of title/buy-out. At the request of the Husband, the purchase price is $650,000.00 with a Seller's gift of equity in the amount of $130,000.00. Husband shall be responsible to continue to pay all carrying charges on the marital residence up to and through closing. The Husband shall pay all taxes due and owing on the house and any real estate taxes picked up at closing (whether owing or for future taxes) shall come from the Husband, without contribution from the Wife. The only closing costs to be charged against Wife's $100,000.00 share shall be the NYC and NYS transfer tax. All other customary Sellers charges/taxes not indicated above shall be responsibility of the Husband.

The parties agree that simultaneously with the signing of this Stipulation, or as close thereto as may be practicable, the Wife (and her Mother) shall transfer title to said property to the Husband solely by a Bargain and Sale deed with Covenants Against Grantors Acts, and that the Wife shall execute any and all documents reasonably necessary to effectuate same. The parties' estimate a closing date of on or about December 10, 2017.

In the event a lien or judgment against the marital residence is discovered at the time of closing, or to have existed prior to closing, the Husband shall satisfy same and hold the Wife otherwise harmless. The Husband shall solely be responsible for the fees associated with filing the transfer documents and the recording of all closing documents.

Upon the real estate closing and transfer of title, the Husband agrees he shall remove the Wife's name from any bills or obligations pertaining to the marital residence. The Husband shall transfer all utilities into his name immediately upon the closing being scheduled and in no event later than 48 hours prior to closing. The Husband shall be solely responsible to pay all outstanding bills (i.e., taxes, utilities, fuel oil or any similar items) both prior to and following the transfer of title, regardless of whether same is his name – so long as same run to the property. The Husband shall indemnify the Wife for any unpaid balances that Wife pays as a

15

result of the Husband's failure to do so. To the extent necessary, the Wife shall cooperate in executing any documentation necessary, if any, so as to remove her name from any bills or obligations pertaining to the marital residence. Upon the signing of the documents relating to the transfer of the marital residence, and the Stipulation of Settlement, Wife acknowledges that she shall fully vacate the marital residence within thirty (30) days thereafter, and, upon doing so, her further presence at the marital residence (e.g. to pick up remaining personal items etc.)., shall be only at the invitation and scheduling of the Husband.

### E. Retirement

The parties acknowledge that the Husband has a Retirement Account through his employer, RCN Cable ) acquired during the marriage. The account is entitled the RCN Cable Retirement Savings Plan (of RCN Telecom Services LLC), a 401(K), same being presently administered by Lincoln Financial Group. Based upon statement provided by the Husband, the account balance as of October 31, 2017 was $180,429.53. The Husband acknowledges this 401(k) above-listed is the sole and only retirement account of any kind, wheresoever situated for which he has a present or future interest in as a result of his employment. Husband's representation is material to the instant agreement. Wife does not waive her right to equitable distribution of any retirement asset not disclosed herein, said right shall survive this Agreement. The Wife acknowledges that she had a right to receive statements from the Husband's and further discovery regarding said listed account and waives her right to do so but specifically chooses to rely upon the representations of the Husband as referenced herein. In consideration of receipt of the sum of $50,000.00 (Fifty thousand dollars) after tax dollars, the Wife hereby waives any and all interest she may have in the above-listed Husband's 401k, now or in the future, and

16

agrees that the Husband will retain same in his name free and clear of any claims the Wife may have to this account. The Husband shall be responsible for the timely payment of any and all taxes on the withdrawal and shall pre-pay and taxes and penalties (if any) associated with the transfer and to that extent necessary, shall borrow (loan) sufficient funds to pay said penalties at the time of transfer and shall hold the Wife harmless from the payment thereon. In the event the Wife is found to be responsible for any tax liability associated with the $50,000.00 payment from the Husband as indicated in this paragraph, Husband shall be responsible for timely reimbursement thereon (together with any interest or penalties assessed thereon.

Payment by the Husband of the $50,000.00 from the RCN 401K shall occur no later than the earlier of the following two events: 60 days from the closing on the transfer of the marital residence or February 28, 2018, whichever shall sooner occur. In the event the Wife does not receive the full payment of $50,000.00 (fifty thousand dollars), after-tax, by the aforementioned date, the Wife's shall have the right to withdraw her waiver of her marital share in the Husband's 401K. In such event, the Wife shall have the right to seek to collect (through a Domestic Relations Order or other means) the greater of $50,000.00 or one-half of the Husband's RCN 401k, together with reasonable and necessary attorney's fees.

### F. Bank Accounts

The parties acknowledge at the time of the signing of the within Stipulation that they have the following joint account:

| Financial Institution | Title Holder |
| --- | --- |
| Bank of America ending 1283 | Jointly held (balance $50) |
| Capital One Bank ending 6908 | Jointly held (ending bal $0) |

The parties acknowledge that this account previously held joint funds that were established to pay any State and Federal taxes owed by the parties. The parties hereby agree that this account shall be closed simultaneously with signing the within Stipulation and that the de minimis monies as represented by the Husband contained in said account shall be the sole property of the Husband, in consideration of all of the other provisions of this Agreement. .

The parties acknowledge that the Wife has the following checking and savings accounts;

| Financial Institution | Title Holder | Account # | Balance |
|---|---|---|---|
| NONE | | | $ |

The parties hereby agree that all of the Wife's accounts established hereafter shall forever remain the separate and sole property of the Wife, and that the Husband waives and relinquishes any and all rights he may have to said accounts.

The parties acknowledge that the Husband has the following checking and savings accounts;

| Financial Institution | Title Holder | Account # | Balance |
|---|---|---|---|
| NONE | | | $ |

The parties hereby agree that all of the Husband's accounts established in the future shall forever remain the separate and sole property of the Husband, and that the Wife waives and relinquishes any and all rights she may have to said accounts.

**G. Debt's**

18

The parties acknowledge that neither the Husband/Wife has any debts in his/her name solely. The parties hereby agree that any credit card debt that they have incurred in their sole name or may incur in their sole name, shall remain the sole responsibility of the party who incurs said debt, and each party shall be solely responsible for their own credit card debt from the date of the signing of the within Stipulation.

### H. Equitable Distribution

As indicated in this Stipulation, The Wife shall deed her interest in the marital residence to the Husband pursuant to the provisions of this Agreement, and waive any right or interest in the personal property, and retirement assets of the Husband. In exchange, the Wife will receive $100,000.00 at the transfer of the marital residence (real estate closing, this amount shall only be reduced by NYC/NYS transfer tax estimated to be about $9,100.00), together with an additional $50,000 from the Husband's 401k, in addition to the award of maintenance herein.

Both parties acknowledge and agree that each has had the right to have the full extent of the assets of the other party appraised and understand that the terms of this agreement may not be equal, but are fair and reasonable to the parties, under the existing circumstances, and agree to be bound by same, waiving any present and future right to seek any further equitable distribution.

The parties hereby acknowledge that the Wife does not currently have a life insurance policy. The parties hereby agree that upon execution of this Stipulation, the Wife is permitted to name any future beneficiary of any life insurance policy she may hereinafter acquire. Further, said policy shall be the sole and exclusive property of the Wife.

The parties hereby acknowledge that the Husband currently has a life insurance policy with _____ Insurance Company, with a face amount of $_____ .00, which names the Wife as a

19

beneficiary of same. The Husband shall keep said policy in full force and effect, with the Wife as irrevocable beneficiary unless and until Husband has satisfied all of his financial obligations contained in this agreement, to wit:    payment for equitable distribution, child support, and maintenance. Husband shall provide proof to Wife on or before January 1st of each year of the existance of the policy and payment thereon.    Failure of the Husband to maintain the policy to meet his obligations hereunder, shall provide Wife with a claim against the estate of the Husband.

## ARTICLE X

## HEALTH INSURANCE DRL §255

Both parties are fully aware that upon the entry of the Judgment of Divorce that they will no longer be covered by the other party's health insurance plan and that each party shall be responsible for his or her own health insurance coverage, and may be entitled to purchase health insurance on his or her own through a COBRA option, if available.

The parties each have health insurance, independently through their respective employers.

Annexed hereto is a sworn Affidavit executed by both parties acknowledging same in compliance with Domestic Relations Law §255(2).

## ARTICLE XI

## INCOME TAX RETURNS

In connection with any audit of joint income tax returns heretofore filed by the Husband and Wife, the party receiving notice thereof shall immediately notify the other party, by certified mail, return receipt requested, enclosing a copy of such notice.  In the event there is any deficiency assessment, arising from either party's failure to report income that should have been reported, that party shall pay the amount ultimately determined to be due thereon,

including penalties and interest.

Each party agrees to cooperate fully with the other in the event of any audit or examination by a taxing authority of the said joint tax returns and agrees to furnish such papers, records, documents and information, as may be reasonably appropriate in connection with such audit or examination.

The Husband agrees to indemnify and hold the Wife harmless from any and all claims for any taxes that may be made by any Federal or State agency attributable to the Husband's income and earnings or improper deduction(s) during any year arising out of the filing of any joint income tax returns by the parties, and the Wife likewise agrees to indemnify and hold the husband harmless from any and all claims for any taxes that may be made by any Federal or State agency attributable to the Wife's income and earnings or improper deduction(s) during any year arising out of the filing of any joint income tax returns by the parties. In consideration for the foregoing, the parties agree that except for audits initiated by or at the behest of the other party, which results in assessments, penalties and interest on account of prior joint tax returns, each party agrees to hold the other harmless and indemnified in the event there is a determination that the parties owe monies to the government for unpaid taxes, interest, penalties, and reasonable counsel and accounting fees to defend against same, unless and to the extent that the same has been caused by the failure or neglect of the other party to disclose any income which should have been included in said returns or to the extent that any deductions solely allocated to their income are disallowed.

In the event there is any delinquency of taxes, then the Husband shall be the party to timely pay the amount of the delinquency.

## ARTICLE XII

## CUSTODY AND PARENTING TIME

The parties agree that there are two (2) children born of this marriage, to wit: Jeremy Paul Rampersad, born ██████████ (age 23) who is fully emancipated AND Sarah Ruth Rampersad, born ██████████.

The parties further agree that based upon the age of the one unemancipated minor child, Sarah Rampersad, born ██████████, no order of Custody shall be sought or granted. The parties shall share joint legal custody of the one unemancipated minor child of the marriage, to wit: Sarah Rampersad, born ██████████, with the Plaintiff Mother being the residential custodial parent for child support purposes.

## ARTICLE XIII

## CHILD SUPPORT

The parties acknowledge and represent that there are two (2) children born of the parties to this marriage, to wit: JEREMY PAUL RAMPERSAD, born ██████████ and SARAH RUTH RAMPERSAD, born ██████████ JEREMY PAUL RAMPERSAD is age 23 and fully emancipated. There is one child entitled to support, to wit: SARAH RUTH RAMPERSAD, born ██████████.

The child Sarah Ruth Rampersad shall reside primarily with the Mother, and therefore Mother is the residential custodial parent of the one unemancipated child, Sarah Ruth Rampersad for purposes of child support.

### *CHILD SUPPORT FOR SARAH RUTH RAMPERSAD UNDER CSSA GUIDELINES*

The parties' acknowledge the Wife is not working but is capable of working. For child support purposes, Wife has the potential to earn approximately $ 22,500.00 after FICA. The income of the Husband is approximately $73,000.00 after FICA. The combined income of the parties for child support purposes is $95,500.00. The combined income is below $143,000.00. The parties agree to apply the CSSA guidelines on all income.

22

The applicable child support percentage is 17%. The annual child support obligation of the parties is $16,235.00 or $1,352.02 monthly. The Husband's obligation is 76.44, which is approximately $12,410.00 annually, and $1,034.17 monthly.

### PARTIES AGREEMENT FOR CHILD SUPPORT

The parties' agreement is Husband/Father shall pay $400.00 monthly (Four hundred and 00/100 dollars) to the Wife/Mother as and for the child support of the one remaining minor child of the marriage, to wit: Sarah Ruth Rampersad, born ███████.

### BASIS FOR DEVIATION FROM CSSA GUIDELINES

The basis for the deviation is the extensive parenting time enjoyed by the Father, the Father not contesting the relocation of the child, the anticipated travel costs to the Father upon the anticipated relocation of the Mother to Florida, the non-economic contributions of the parties toward the care and well-being of the child, the settlement for equitable distribution including the agreement regarding spousal maintenance and the Husband agreeing to cover the children on his health insurance, and the financial resources of the parties.

Said payments shall cease as soon thereafter as the parties' issue, to wit: Sarah Ruth Rampersad, born ████████ attains (21) years of age as hereinbefore set forth herein except if emancipated as hereinafter defined occurs earlier or is extended based upon the provisions herein. Said payments shall also cease on the death of the Husband.

Both parties acknowledge that they have received and read the CSSA guidelines and are fully familiar with said terms and obligations. The basic child support obligation presumptively results in the correct child support. For the reasons stated above, the parties agree that the child support agreed upon here deviates from the presumptive child support.

The Family Court and Supreme Court shall retain concurrent jurisdiction. The parties further consent and agree that the appropriate court shall similarly be allowed to exercise

jurisdiction over this matter provided the party commencing said action would otherwise be entitled to bring said action under law. The parties are aware that pursuant to statute, the child support provisions contained herein are subject to modifications as deemed appropriate by a court of competent jurisdiction in light of an unanticipated change in the financial circumstances of the parties, a 15% change in the income of one of the parties', or after three (3) years from the date of this Agreement. Nevertheless, the parties agree to "opt out" of the deviation provisions, and intend the support provisions to be fixed and not subject to modification, said agreement being based upon the financial provisions regarding Equitable Distribution in this Stipulation of Settlement and the age of the child.

The payment of monthly child support shall not be made through the Support Collection Unit. Monthly payments shall be made in check or money order payable on or before the first day of each and every month through the month of emancipation. It is expressly agreed and understood that the waiver by the custodial parent of the use of the Support Collection Unit (SCU) to collect payment of basic child support through an income deduction order is expressly conditioned on Husband remaining current on both this basic child support obligation and any timely payments he may, from time to time, have to make pursuant to this agreement for unreimbursed medical expenses. Should Husband not remain current on his payment obligations, Wife has the absolute right to pursue and secure enforcement through any available means, without regard to whether Wife becomes current after the application is made.

Husband further agrees to maintain a life insurance policy with a face amount of not less than $70,000.00 making the other party trustee and the children of the marriage as the beneficiary. Said policy must remain in full force and effect until emancipation of the child. Husband warrants that his present life insurance policy is with _____

## MEDICAL COVERAGE

It is expressly understood and agreed that the HUSBAND shall continue to provide the existing major medical insurance for the benefit of the one (1) minor child, to wit: SARAH PAUL RAMPERSAD, born ████████ until said infant issue attain twenty-one (21) years of age. Husband further agrees that he shall continue to provide coverage for the minor child beyond emancipation and up until age 26 if Husband is allowed under current law. Husband's obligation shall be substantially similar to the coverage presently carried by him as provided by her employment.

The Husband presently has coverage for each of the minor issue through the United HealthCare, ID 825505816, Group Number 743295 P.O. Box 740800, Atlanta. Ga. 30374-0800. In the event Husband loses coverage and the Wife has coverage through any employment she may have, Wife must cover said child on any such plan she may have through her employment. In such event, Husband shall reimburse the Wife for the actual monthly cost for the coverage specifically for the child.

In the event no party has health insurance, the parties shall secure basic health coverage for the child with the cost being allocated 80% to Husband and 20% to Wife.

The parties further agree all out of pocket medical expenses, including but not limited to out of network medical fees (including but not limited to doctor, hospital, tests, prescriptions, therapy, et. al. shall be allocated (responsibility) between the parties at 80% Father and 20% Mother. The parties recognize such costs may be reasonable and necessary in light of the pre-existing medical condition of the child and the agreed upon move of the child (with the Mother) to Florida which may necessitate possible out of network cost(s).

## ARTICLE XV

## LEGAL REPRESENTATION

The Wife represents that she has had independent legal advice in connection with this Stipulation and the pending action for divorce, and has been represented by DOUGLAS SCHEINMAN, ESQ., 104 South Central Avenue, Ste. 14, Valley Stream, New York 11580

The Husband represents that he has had independent legal advice in connection with this Stipulation and the pending action for divorce, but has chosen to represent his own legal interest regarding this matter. The Husband specifically represents that he has the financial resources to retain counsel and voluntarily chooses not to retain counsel. The Husband represents he has been provided adequate time to speak with counsel, review the agreement, and participate in the underlying negotiations prior to executing same.

The parties agree that they are solely responsible for any legal fees due and owing to their respective attorneys. In connection with preparation of this Agreement and legal fees incurred by the Wife, Husband agrees to pay to Wife directly $1,000.00 toward her legal fees at the time of the signing of this Agreement. Wife retains the right to enforce this provision should same not be paid.

In the event a party breaches this Stipulation and/or violates the Judgment of Divorce or other order(s), that party shall pay the reasonable attorney's fees of the other party in connection with any enforcement or violation action or proceeding.

Each party represents that no attorney has provided tax advice to either party and each has been so advised to obtain separate independent tax guidance prior to signing this Agreement.

## ARTICLE XVI

## FURTHER INSTRUMENTS

The Husband and Wife shall, at any and all times, upon request by the other party, or

his or her legal representatives, make, execute, and deliver any and all such other and further instruments as may be necessary or desirable for the purposes of giving full force and effect to the provisions of this Stipulation, without charge therefore.

## ARTICLE XVII
## EMANCIPATION

Emancipation of the child for the purposes of this agreement shall be deemed to have occurred upon the earliest happening of the following events:

- The 21st birthday of the child; except if the child is a full time student, then until 22 years;

- Marriage of the child;

- Permanent residence away from the residence of the custodial parent. A residence at camp or college is not deemed away from the custodial parent sufficient to constitute emancipation;

- Death of a child:

- Engaging in full-time employment upon and after the child attains the age of eighteen years of age, except that:

(i) Engaging by the child in partial, sporadic, or part-time employment shall not constitute emancipation, and;

(ii) Engaging by the child in full-time employment during the vacation and summer periods shall not be deemed to be emancipation.

## ARTICLE XVIII

## RECONCILIATION AND MATRIMONIAL DECREES

This Stipulation shall not be invalidated or otherwise affected by a reconciliation between the parties hereto, or a resumption of the marital relations between them unless said reconciliation or said resumption be documented by a written statement executed and acknowledged by the parties with respect to said reconciliation and resumption and, in addition, setting forth that they are canceling this agreement. This Stipulation shall not be invalidated or otherwise affected by any judgment of separation or divorce made by any Court

in any action or proceeding, which may hereafter be instituted by either party against the other. The rights, obligations and covenants of this Stipulation shall survive any decree or judgment of divorce and shall not merge therein, and this Stipulation may be enforced independently of such judgment. In the event there is dissolution of the parties' marriage, the terms of this Stipulation will be incorporated into the judgment dissolving the marriage and the parties shall be directed to comply herewith.

<div align="center">

## ARTICLE XIX

### SEVERABILITY

</div>

If any of the provisions of this Stipulation are held invalid or unenforceable, all other provisions of this Stipulation shall nevertheless continue in full force or effect.

<div align="center">

## ARTICLE XX

### BINDING EFFECT

</div>

Except as otherwise stated herein, all the provisions of this Stipulation shall be binding upon the parties, their legal representatives, their respective heirs, next of kin, executors, and administrators of the parties.

<div align="center">

## ARTICLE XXI

### UNCONTESTED ACTION

</div>

The Husband shall consent to the entry of Judgment based on the Wife's claim of the irretrievable breakdown of the marriage, pursuant to DRL §170(7). Simultaneously with the signing of this Agreement, Husband shall execute a valid Defendant's Waiver Affidavit to allow the matter to be placed on the Uncontested Submission Calendar. If an Inquest is held herein, the Husband shall not contest the Wife's claim for a divorce and shall submit and consent to same.

<div align="center">

## ARTICLE XXII

</div>

## FULL DISCLOSURE

Each party has had a full and complete opportunity to make independent inquiry into the financial circumstances of the other and has been informed of the income, assets, property and financial prospects of the other to the extent that the same is desired. Each party is satisfied that this Stipulation, and all of the terms and provisions hereof, are fair and equitable. Each party is also aware of the risks attendant to the instant litigation. The parties have been further advised of their right to compel discovery and inspection of the financial books and records of the other party and of their right to have accountants, appraisers and other investigate, appraise and evaluate any or all of the assets of the other.

Each party has been advised of, to conduct a full and complete examination into the financial condition and circumstances of the other, and each has had sufficient disclosure regarding the other parties' finances and is satisfied with the provision of equitable distribution as hereafter provided and fully and completely accepts such equitable distribution and each waives any right to disclosure. To that end, each party has instructed their respective attorneys not to pursue any further or additional discovery in this matter. Each party hereto acknowledges that each is satisfied with the investigation that has been conducted or completed, and each is satisfied with the nature and extent of the knowledge of the property of the other acquired during the pendency of this lawsuit and/or during the marriage and each understands and acknowledges that the extent of the property of the other and is satisfied with the provisions this Stipulation.

Each waives any and all right to further discovery and any and all claim against the property of the other except such claims are as set forth in this Stipulation. To confirm that each is waiving any and all claims to equitable distribution, except as provided by this Stipulation, and confirms that each understands the nature and extent of the waiver and to confirm that

29

each has read the provisions of this Article, each sets his or her signature at the end of this paragraph.

Each party acknowledges that a claim based upon incomplete or improper financial disclosure may be a basis for invalidating or changing any of the terms of this agreement and its content. Nevertheless, the parties agree that they are satisfied with the disclosures made prior to entering into this agreement and proceed on the basis of knowledge as it presently exists.

## ARTICLE XXIII

## PARTIAL INVALIDITY

If any provision of this agreement, or any part thereof, is held to be invalid or unenforceable, all other provisions shall nevertheless continue in full force and effect.

## ARTICLE XXI

## LEGAL INTERPRETATION

This agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of New York as an agreement made and to be performed within said State.

## ARTICLE XXV

## INDEPENDENT COVENANTS

Each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced independently irrespective of any of the other rights and obligations set forth herein.

## ARTICLE XXVI

## MODIFICATION AND WAIVER

Neither this Stipulation nor any provision hereof, shall be amended, waived or modified or deemed amended, waived or modified, except by an agreement in writing duly subscribed

and acknowledged with the same formality as this Stipulation. Any waiver by either party of any provision of this Agreement or any right or option hereunder shall not be deemed a continuing waiver and shall not prevent or estop such party from thereafter enforcing such provision, right or option. The failure of either party to insist in any one or more instances upon the strict performance of any of the terms or provisions of this Stipulation by the other party shall not be construed as a waiver or relinquishment for the future of any such term or provision.

## ARTICLE XXVII

### ENTIRE UNDERSTANDING

This Stipulation contains the entire understanding of the parties who hereby acknowledge that there have been and are no representations, warranties, covenants, or undertakings other than those expressly set forth herein.

## ARTICLE XXVIII

### RELIGIOUS DIVORCE

Each party agrees that he or she has taken or will promptly take, prior to the entry of a final judgment of divorce, all steps solely within his or her power to remove any barrier to the remarriage of the other following a divorce and shall in all respects comply with the provisions of Domestic Relations Law Section 253.

## ARTICLE XXIX

### DEFAULT

In the event that either party defaults with respect to any obligation of his or hers under this Agreement and said default is not remedied within fifteen (15) days after sending of a written notice by certified mail to the defaulting party specifying such default, the defaulting party shall indemnify the other against, or reimburse him or her for the actual counsel fees and

all other actual expenses resulting from or made necessary by the bringing of any suit or other proceeding to enforce any of the terms, covenants or conditions of this Agreement, or of defending such modification proceeding, provided such suit or other proceeding results in a judgment or order in favor of the party instituting it.

It is understood and agreed that in the event one of the parties shall institute a suit or other proceeding against the other party, to enforce any of the terms and covenants or conditions of the Agreement, and after the institution of a suit or other proceeding, the other party shall comply with such term or condition of the Agreement then and in that event the suit, motion or proceeding shall be deemed to have resulted in a judgment or order in favor of the party instituting it.

The parties agree that either of them, in a single action or proceeding with respect to said payments and obligations, shall be entitled to sue and recover said attorney's fees and disbursements.

## ARTICLE XXX

## SUBSEQUENT DISSOLUTION

The parties agree that if, for any reason the Court does not grant a Judgment of Divorce, in the immediate time frame contemplated by the parties and this Agreement, that this agreement shall constitute an "Agreement of Separation" as that term is defined by Domestic Relations Order Section 170.

This Stipulation shall be "so ordered" and shall not be invalidated or otherwise affected by any judgment of dissolution, separation or divorce made by any Court in any action which may presently exist or may hereafter be instituted by either party against the other for a

dissolution, separation, or divorce. The obligations and covenants of this Stipulation shall survive any judgment of dissolution, separation or divorce and shall not merge therein, and this Stipulation may be enforced independently of such judgment.

This Stipulation shall not be extinguished by merger as the result of incorporation in any judgment, or otherwise, but shall in all events survive such judgment and be binding upon the parties.

EACH OF THE PARTIES ACKNOWLEDGES:

1. THAT HE OR SHE HAS READ THIS AGREEMENT; THAT HE OR SHE UNDERSTANDS THE TERMS OF THIS AGREEMENT;

2. THAT HE OR SHE UNDERSTANDS THAT THIS AGREEMENT WILL BE BINDING ON HIM OR HER IN ALL CIRCUMSTANCES INCLUDING A DIVORCE OR THE DEATH OF THE PARTIES; AND

3. THAT HE OR SHE ACKNOWLEDGES THAT HE OR SHE HAS HAD A FULL OPPORTUNITY TO CONSULT WITH COUNSEL OF HIS OR HER OWN SELECTION

IN WITNESS WHEREOF, the parties hereto have hereunto set their respective hands and seals as of _____ 2017 and _____ 2017 to four (4) counterparts hereof, each of which shall constitute an original.

_Radika Rampersad_
RADIKA RAMPERSAD

_Basdeo Rampersad_
BASDEO RAMPERSAD

STATE OF NEW YORK      )
                       ) ss.:

33

COUNTY OF _____

On the ___ day of November, 2017 before me, the undersigned, a notary public in and for said State, **RADIKA RAMPERSAD** personally appeared, personally known to me or proved to me on the basis of satisfactory evidence, to be the individual(s) that she executed the same in her capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

DOUGLAS M. SCHEINMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02SC4965186
Qualified in Nassau County
My Commission Expires April 16, 2018

_____
NOTARY PUBLIC

STATE OF NEW YORK )
) ss.:
COUNTY OF _____ )

On the _11_ day of November, 2017, before me, the undersigned, a notary public in and for said State, **BASDEO RAMPERSAD** personally appeared, personally known to me or proved to me on the basis of satisfactory evidence, to be the individual(s) that she executed the same in his capacity, and that by her signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

MYRON HELLER
Notary Public, State of New York
No. 43-4990982
Qualified in Richmond County
Commission Expires Jan. 21, 2019

_____
NOTARY PUBLIC


**COMPLIANCE WITH DOMESTIC RELATIONS LAW 255(2)**
**RADIKA RAMPERSAD v. BASDEO RAMPERSAD**
Index No. 11063/2017

Each party is aware that he or she will no longer be covered by the other party's health insurance plan and that each party shall be responsible for his or her own health insurance coverage, and may be entitled to purchase health insurance on his or her own through a COBRA option, if available.

Dated: November_____, 2017

_____
RADIKA RAMPERSAD

34

_Basdeo Rampersad_
**BASDEO RAMPERSAD**

SS: STATE OF NEW YORK, COUNTY OF _Nassau's_

On this _11th_ day of ~~November~~ _December_ 2017, before me; the undersigned, personally appeared **RADIKA RAMPERSAD**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in his/her capacity, and that by her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

DOUGLAS M. SCHEINMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 02SC4965186
Qualified in Nassau County
My Commission Expires April 16, 2018

_____
NOTARY PUBLIC

SS: STATE OF NEW YORK, COUNTY OF _Queens_

On this _11th_ day of ~~November~~ _December_, 2017, before me; the undersigned, personally appeared **BASDEO RAMPERSAD**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his/her capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

MYRON HELLER
Notary Public, State of New York
No. 43-4990982
Qualified in Richmond County
Commission Expires Jan. 21, 2019

_____
NOTARY PUBLIC

## SCHEDULE A ( WIFE property to be removed )

- 1 TV from daughters room
- 1 Bose system
- picture frames on wall
- kitchen aid food processor
- 1 ninja blender
- 1 halogen counter top fryer
- bicycles
- 1 5-gallon water bottle containing both coins and paper currency, belonging to my daughter
- 1 5-piece dining table
- 1 5-piece luggage set belonging to my daughter
- 1 canon printer/fax machine

- various baking pans belonging to my daughter
- various pots and pans
- various pyres bows
- any and all gifts given to me personally by family members/anyone over the years.
- all personal property belonging to both myself and daughter, clothes and shoes, several different tools for hair styling
- Daughter owns a guitar, dolls any personal toys from over the years.
- laptops belonging to me one in working condition the other is not
- 1 laptop belonging to daughter in working condition
- 2 canon DSLR camera one belonging to my daughter other belonging to myself
- 2 king size quilts
- 1 dog (Jayce) daughters pet